THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GERALD A. YOUNG, Appellant.

First Department, February 14, 1961.

*Jacob S. Schulman* for appellant.

*Robert O. Lehrman* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

BREITEL, J. The question is whether one is criminally liable for assault in the third degree if he goes to the aid of another who he mistakenly, but reasonably, believes is being unlawfully beaten, and thereby injures one of the apparent assaulters. In truth, the seeming victim was being lawfully arrested by two police officers in plain clothes. Defendant stands convicted of such a criminal assault, for which he received a sentence of 60 days in the workhouse, the execution of such sentence being suspended.

Defendant, aged 40, regularly employed, and with a clean record except for an $8 fine in connection with a disorderly conduct charge 19 years before in Birmingham, Alabama, observed two middle-aged men beating and struggling with a youth of 18. This was at 3:40 P.M. on October 17, 1958 in front of 64 West 64th Street in Manhattan. Defendant was acquainted with none of the persons involved; but believing that the youth was being unlawfully assaulted, and this is not disputed by the other participants, defendant went to his rescue, pulling on or punching at the seeming assailants. In the ensuing affray one of the older men got his leg locked with that of defendant and when defendant fell the man's leg was broken at the kneecap. The injured man then pulled out a revolver, announced to defendant that he was a police officer, and that defendant was under arrest. It appears that the youth in question had played some part in a street incident which resulted in the two men, who were detectives in plain clothes, seeking to arrest him for disorderly conduct. The youth had resisted, and it was in the midst of this resistance that defendant came upon the scene.

At the trial the defendant testified that he had known nothing about what had happened before he came upon the scene; that he had gone to his aid because the youth was crying and trying to pull away from the middle-aged men; and that the older men had almost pulled the trousers off the youth. The only detective who testified stated, in response to a question from the court, that defendant did not know and had no way of knowing, so far as he knew, that they were police officers or that they were making an arrest.

Two things are to be kept sharply in mind in considering the problem at hand. The first is that all that is involved here is a criminal prosecution for simple assault (Penal Law, § 244), and that the court is not concerned with the incidence of civil liability in the law of torts as a result of what happened on the street. Second, there is not here involved any question of criminal responsibility for interfering with an arrest where it is known to the actor that police officers are making an arrest, but he mistakenly believes that the arrest is unlawful.

Assault and battery is an ancient crime cognizable at the common law. It is a crime in which an essential element is intent (1 Wharton's, Criminal Law and Procedure [Anderson ed., 1957], § 329 et seq.; 1 Russell, Crime [11th ed.], p. 724). Of course, in this State the criminal law is entirely statutory. But, because assault and battery is a " common-law " crime, the statutory provisions, as in the case of most of the common-law crimes, do not purport to define the crime with the same particu-

larity as those crimes which have a statutory origin initially (Penal Law, § 240 *et seq.*). One of the consequences, therefore, is that while the provisions governing assault, contained in the Penal Law, refer to various kinds of intent, in most instances the intent is related to a supplemental intent, in addition to the unspecified general intent to commit an assault, in order to impose more serious consequences upon the actor (e.g., Penal Law, § 240). In some instances, of course, the intent is spelled out to distinguish the prohibited activity from what might otherwise be an innocent act or merely an accidental wrong (e.g., Penal Law, § 242, subds, 1, 2).

It is in this statutory context that it was held in *People* v. *Katz* (290 N. Y. 361) that in order to sustain a charge of assault in the second degree, based upon the infliction of grievous bodily harm, not only must there be a general intent to commit unlawful bodily harm but there must be a '' specific intent '', i.e., a supplemental intent to inflict grievous bodily harm. The case, therefore, does provide an interesting parallel analysis forwarding the idea that assault is always an intent crime even when the statute omits to provide expressly for such general intent, as is the case with regard to assault in the third degree (Penal Law, § 244). Even Russell notes that, '' It has been the general practice of the legislature to leave unexpressed some of the mental elements of crime '' (*op. cit.*, p. 74).

With respect to intent crimes, under general principles, a mistake of fact relates as a defense to an essential element of the crime, namely, to the *mens rea* (1 Wharton's, *op. cit.*, § 157; 1 Russell, *op. cit.*, pp. 75-85). The development of the excuse of mistake is a relatively modern one and is of expanding growth (1 Bishop, Criminal Law [9th ed.], p. 202 *et seq.*, esp. the exhaustive and impassioned footnote which commences at p. 206 and continues through to p. 214; see *Shorter* v. *People,* 2 N. Y. 193). But the defense was already on the march at the time of Blackstone (4 Blackstone's, Comm., § 27, see esp. the footnote discussion to that section in the Jones ed. [1916]). Russell (*supra*) details the tortuous development of the defense and the long road travelled between treating it as a species of involuntary conduct until it was finally recognized as a negation of criminal intent, thus ranging from the older view that criminal liability should depend upon '' objective moral guilt '', rather than, as in the modern thinking, upon subjective intent, i.e., *mens rea.*

Mistake of fact, under our statutes, is a species of excuse rather than a matter of justification. Consequently, reliance on

section 42 * of the Penal Law which relates exclusively to justification is misplaced. Section 42 would be applicable only to justify a third party's intervention on behalf of a victim of an unlawful assault, but this does not preclude the defense of mistake which is related to subjective intent rather than to the objective ground for action. It is interesting that in tort at the common law excuse was provable under the general issue while justification must have been specially pleaded (1 Bacon, Abridgement [1868], tit. Assault and Battery, par. [C], p. 374). While the distinctions between excuse and justification are often fuzzy, and more often fudged, in the instance of section 42 its limited application is clear from its language.

It is in the homicide statutes in which the occasions for excuse or justification are made somewhat clearer (see Penal Law, §§ 1054, 1055); but the distinction is still relevant with respect to most crimes. In homicide it is made explicitly plain that the actor's state of mind, if reasonable, is material and controlling (Penal Law, § 1055, penult. par. 1). It does not seem rational that the same reasonable misapprehension of fact should excuse a killing in seeming proper defense of a third person in one's presence but that it should not excuse a lesser personal injury.

In this State there are no discoverable precedents involving mistake of fact when one intervenes on behalf of another person and the prosecution has been for assault, rather than homicide. (The absence of precedents in this State and many others may simply mean that no enforcement agency would prosecute in the situations that must have occurred.) No one would dispute, however, that a mistake of fact would provide a defense if the prosecution were for homicide. This divided approach is sometimes based on the untenable distinction that mistake of fact may negative a " specific " intent required in the degrees of homicide but is irrelevant to the general intent required in simple assault, or, on the even less likely distinction, that the only intent involved in assault is the intent to touch without consent or legal justification (omitting the qualification of unlawfulness). The last, of course, is a partial confusion of tort law with criminal law, and even then is not quite correct (Restatement, Torts, §§ 63–75).

---

* The section reads as follows:

" § 42. Rule when act done in defense of self or another.

" An act, otherwise criminal, is justifiable when it is done to protect the person committing it, or another whom he is bound to protect, from inevitable and irreparable personal injury, and the injury could only be prevented by the act, nothing more being done than is necessary to prevent the injury."

There have been precedents elsewhere among the States (6 C. J. S., Assault and Battery, § 93; American Digest System, Assault and Battery [Century ed.], § 98; [Dec. Dig.], § 68). There is a split among the cases and in the jurisdictions. Most hold that the rescuer intervenes at his own peril (e.g., *State* v. *Ronnie,* 41 N. J. Super. 339; *Commonwealth* v. *Hounchell,* 280 Ky. 217), but others hold that he is excused if he acts under mistaken but reasonable belief that he is protecting a victim from unlawful attack (e.g., *Kees* v. *State,* 44 Tex. Cr. Rep. 543; *Little* v. *State,* 61 Tex. Cr. Rep. 197; *Brannin* v. *State,* 221 Ind. 123; *State* v. *Mounkes,* 88 Kan. 193). Many of the cases which hold that the actor proceeds at his peril involve situations where the actor was present throughout, or through most, or through enough of the transaction and, therefore, was in no position to claim a mistake of fact. Others arise in rough situations in which the feud or enmity generally to the peace officer is a significant factor. Almost all apply unanalytically the rubric that the right to intervene on behalf of another is no greater than the other's right to self-defense, a phrasing of ancient but questionable lineage going back to when crime and tort were not yet divided in the common law — indeed, when the right to private redress was not easily distinguishable from the sanction for the public wrong (Russell, *op. cit.,* p. 20 *et seq.*).

It would protract the discussion and be bootless to detail all the cases, or even to make further illustrative selection. In England, however, it is interesting to observe, a defendant who intervened mistakenly in a proper arrest by peace officers has been held liable, not for assault, but under a specific statute related to police officers acting in the execution of their duty, and which, the courts construed, did not require knowledge on the part of the third party in order to make him responsible (*Regina* v. *Forbes and Webb,* 10 Cox Cr. Ca. 362 [1865]; *Rex* v. *Maxwell & Clanchy,* 73 J. P. 77; 2 Cr. App. Rep. 26 [Ct. Crim. App., 1909]; 1 Russell, *op. cit.,* pp. 764–766). Of course, in this State, too, there is an express crime for interfering with a lawful arrest (Penal Law, § 242, subd. 5). It is a felony and requires a " specific " intent to resist the lawful apprehension. So that here we have rejected the policy adopted in England expressly making innocent interference with a lawful arrest a crime.

The modern view, as already noted, is not to impose criminal responsibility in connection with intent crimes for those who act with good motivation, in mistaken but reasonable misapprehension of the facts. Indeed, Prosser would not even hold such a person responsible in tort (Torts [2d ed.], pp. 91–92). He

makes the added argument that "if an honest mistake is to relieve the defendant of liability when he thinks that he must defend himself, his meritorious defense of another should receive the same consideration." (Restatement, Torts, *supra,* § 76, also exculpates an actor for intervention on behalf of a third person where the actor has a reasonable belief that the third person is privileged and that such intervention is necessary. Notably, the Restatement sharply limits the persons on whose behalf the actor may intervene, but this, of course, is in the area of civil liability and, as already noted, there are those who would extend the privilege.)*

More recently in the field of criminal law the American Law Institute in drafting a model penal code has concerned itself with the question in this case. Under section 3.05 of the Model Penal Code the use of force for the protection of others is excused if the actor behaves under a mistaken belief (Model Penal Code, Tent. Draft No. 8, May 9, 1958.)**

The comments by the reporters on the Model Penal Code are quite appropriate. After stating that the defense of strangers should be assimilated to the defense of oneself the following is said: "In support of such a ruling, it may perhaps be said that the potentiality for deterring the actor from the use of force is greater where he is protecting a stranger than where he is protecting himself or a loved one, because in the former case the interest protected is of relatively less importance to him; moreover the potential incidence of mistake in estimating fault or the need for action on his part is increased where the defendant is protecting a stranger, because in such circumstances he is less likely to know which party to the quarrel is in the right.

---

* It is interesting that Dean Prosser is now the Chief Reporter for the American Law Institute in the draft of Restatement, Torts, Second. Tentative Draft No. 1 [April 5, 1957] of Restatement, Torts, Second, deletes the limitations to section 76 restricting intervention on behalf of strangers. And in the comments it is stated, " There is no modern case holding that there is no privilege to defend a stranger."

** The full text of subdivision (1) of section 3.05 reads as follows:

" *Section 3.05. Use of Force for the Protection of Other Persons.*

" (1) The use of force upon or toward the person of another is justifiable to protect a third person when:

" (a) the actor would be justified under Section 3.04 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and

" (b) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

" (c) The actor believes that his intervention is necessary for the protection of such other person."

These arguments may be said to lead to the conclusion that, in order to minimize the area for error or mistake, the defendant should act at his peril when he is protecting a stranger. This emasculates the privilege of protection of much of its content, introducing a liability without fault which is indefensible in principle. The cautious potential actor who knows the law will, in the vast majority of cases, refrain from acting at all. The result may well be that an innocent person is injured without receiving assistance from bystanders. It seems far preferable, therefore, to predicate the justification upon the actor's belief, safeguarding if thought necessary against abuse of the privilege by the imposition of a requirement of proper care in evolving the belief. Here, as elsewhere, the latter problem is dealt with by the general provision in Section 3.09.'' (Model Penal Code, Tent. Draft No. 8, *supra,* p. 32.)*

Apart from history, precedents, and the language distinctions that may be found in the statutes, it stands to reason that a man should not be punished criminally for an intent crime unless he, indeed, has the intent. Where a mistake of relevant fact is involved the premises for such intent are absent. True, there are occasions in public policy and its implementation for dispensing with intent and making one responsible for one's act even without immediate or intentional fault. This is generally accomplished by statute, and generally by statute which expressly dispenses with the presence of intent. Thus, it may well be that a Legislature determine that in order to protect the police in their activities and to make it difficult to promote false defenses one may proceed against a police officer while acting in the line of duty only at one's peril, as do the English (*vide supra*). But this is not a part of the intent crime of assault as it existed under common law or as it exists today under the statutes.

Indeed, if the analysis were otherwise, then the conductor who mistakenly ejects a passenger for not having paid his fare would be guilty of assault, which is hardly the case (1 Bishop, *op. cit.,* pp. 202–203). So, too, a police officer who came to the assistance of a brother police officer would be guilty of assault if it should turn out that the brother police officer was engaged in making an unlawful arrest or was embarked upon an assault of his own private motivation (cf. *Reeves* v. *State,* 217 S. W. 2d 19 [Tex.]).

It is a sterile and desolate legal system that would exact punishment for an intentional assault from one like this defendant, who acted from the most commendable motives and without

---

* Equally valuable comments may be found at p. 17 of the same draft, and at p. 140 of Tent. Draft No. 4.

excessive force. Had the facts been as he thought them, he would have been a hero and not condemned as a criminal actor. The dearth of applicable precedents — as distinguished from theoretical generalizations never, or rarely, applied — in England and in most of the States demonstrates that the benevolent intervenor has not been cast as a pariah. It is no answer to say that the policeman should be called when one sees an injustice. Even in the most populous centers, policemen are not that common or that available. Also, it ignores the peremptory response to injustice that the good man has ingrained. Again, it is to be noted, in a criminal proceeding one is concerned with the act against society, not with the wrong between individuals and the right to reparation, which is the province of tort.

Accordingly, the judgment of conviction should be reversed, on the law, and the information dismissed.

VALENTE, J. (dissenting). We are concerned on this appeal with a judgment convicting defendant of the crime of assault in the third degree in violation of subdivision 1 of section 244 of the Penal Law. The defendant assaulted a plain-clothes police officer, while the latter was attempting to effect a lawful and proper arrest of another. We are to determine whether the defendant's ignorance of the officer's police status and his erroneous belief that the detective was a civilian committing an unjustified assault upon the other person — who was a complete stranger to the defendant — excuses the crime. The majority of the court, in reversing the judgment of conviction, holds that defendant's mistake removes the element of intent necessary for a criminal act.

I dissent and would affirm the conviction because the intent to commit a battery was unquestionably proven; and, since there was no relationship between defendant and the person whom the police officers were arresting, defendant acted at his peril in intervening and striking the officer. Under well-established law, defendant's rights were no greater than those of the person whom he sought to protect; and since the arrest was lawful, defendant was no more privileged to assault the police officer than the person being arrested.

Under our statutes a *specific* intent is necessary for the crimes of assault in the first and second degrees (Penal Law, §§ 240, 242). (See *People* v. *Katz*, 290 N. Y. 361.) Generally, the assaults contemplated by those sections were known as '' aggravated '' assaults under the common law. (1 Wharton's, Criminal Law and Practice [Anderson ed., 1957], § 358.) However, assault in the third degree is defined by subdivision 1 of section 244 of the Penal Law as an assault and battery not such

as is specified in sections 240 and 242. No specific intent is required under section 244. All that is required is the knowledgeable doing of the act. "It is sufficient that the defendant voluntarily intended to commit the unlawful act of touching" (1 Wharton's, *op. cit.,* § 338, p. 685).

In the instant case, had the defendant assaulted the officer with the specific intent of preventing the lawful apprehension of the other person he would have been subject to indictment under the provisions of subdivision 5 of section 242 .of the Penal Law, which constitutes such an act assault in the second degree. But the inability to prove a specific intent does not preclude the People from establishing the lesser crime of assault in the third degree which requires proof only of the general intent "to commit the unlawful act of touching", if such exists.

There is evidently no New York law on the precise issue on this appeal. However, certain of our statutes point to the proper direction for solution of the problem. Section 42 of the Penal Law provides: "An act, otherwise criminal, is justifiable when it is done to protect the person committing it, or another whom he is bound to protect, from inevitable and irreparable personal injury". Similarly, section 246, so far as here pertinent, provides:

"To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful in the following cases:

\* \* \*

"3. When committed either by the party about to be injured or by another person in his aid or defense, in preventing or attempting to prevent an offense against his person, or a trespass or other unlawful interference with real or personal property in his lawful possession, if the force or violence used is not more than sufficient to prevent such offense".

These statutes represent the public policy of this State regarding the areas in which an assault will be excused or rendered "not unlawful" where one goes to the assistance of another. They include only those cases in which the other person is one whom the defendant "is bound to protect" (§ 42) or where the defendant is "preventing or attempting to prevent an offense against" such other person (§ 246). Neither statute applies to the instant case since the other person herein was one unlawfully resisting a legal arrest — and hence no offense was being committed against his person by the officer — and he was not an individual whom defendant was "bound to protect".

It has been held in other States that one who goes to the aid of a third person acts at his peril, and his rights to interfere do

not exceed the rights of the person whom he seeks to protect. (*State* v. *Ronnie,* 41 N. J. Super. 339; *Griffin* v. *State,* 229 Ala. 482; *Commonwealth* v. *Hounchell,* 280 Ky. 217; 6 C. J. S., Assault and Battery, § 93, p. 950; 1 Wharton's, *op. cit.,* § 352; 4 Am. Jur., Assault and Battery, § 54, p. 155.) We need not consider to what extent that rule is modified by section 42 of the Penal Law since there is no question here but that the person being arrested was not in any special relation to defendant so that he was a person whom defendant was "bound to protect". It follows then that there being no right on the part of the person, to whose aid defendant came, to assault the officer — the arrest being legal — defendant had no greater right or privilege to assault the officer.

The conclusion that defendant was properly convicted in this case comports with sound public policy. It would be a dangerous precedent for courts to announce that plain-clothes police officers attempting lawful arrests over wrongful resistance are subject to violent interference by strangers ignorant of the facts, who may attack the officers with impunity so long as their ignorance forms a reasonable basis for a snap judgment of the situation unfavorable to the officers. Although the actions of such a defendant, who acts on appearances, may eliminate the specific intent required to convict him of a felony assault, it should not exculpate him from the act of aggressive assistance to a lawbreaker in the process of wrongfully resisting a proper arrest.

I do not detract from the majority's views regarding commendation of the acts of a Good Samaritan, although it may be difficult in some cases to distinguish such activities from those of an officious intermeddler. But opposed to the encouragement of the "benevolent intervenor" is the conflicting and more compelling interest of protection of police officers. In a city like New York, where it becomes necessary to utilize the services of a great number of plain-clothes officers, the efficacy of their continuing struggle against crime should not be impaired by the possibility of interference by citizens who may be acting from commendable motives. It is more desirable — and evidently up to this point the Legislature has so deemed it — that in such cases the intervening citizen be held to act at his peril when he assaults a stranger, who unknown to him is a police officer legally performing his duty. In this conflict of interests, the balance preponderates in favor of the protection of the police rather than the misguided intervenor.

The majority points to the recommendations of the American Law Institute in drafting a Model Penal Code which make the

use of force justifiable to protect a third person when the actor believes his intervention is necessary for the protection of such third person (Model Penal Code, Tent. Draft No. 8, § 3.05, subd. [1], par. [c], p. 30). Obviously these are recommendations which properly are to be addressed to a Legislature and not to courts. The comments of the reporters on the Model Penal Code, from which the majority quotes, indicate (p. 31) that in the United States the view is preserved in much State legislation that force may not be used to defend others unless they stand in a special relationship to their protector. The reporters state: " The simple solution of the whole problem is to assimilate the defense of strangers to the defense of oneself, and this the present section does ". If this be so, then even under the Model Penal Code, since the stranger, who is being lawfully arrested, may not assault the officers a third person coming to his defense may not do so. In any event, the Model Penal Code recognizes that the law as it now stands requires the conviction of the defendant herein. Until the Legislature acts, the courts should adhere to the well-established rules applicable in such cases. Such adherence demands the affirmance of the conviction herein.

BOTEIN, P. J., and BERGAN, J., concur with BREITEL, J.; VALENTE, J., dissents and votes to affirm in opinion, in which EAGER, J., concurs.

Judgment of conviction reversed upon the law and the information dismissed.