STATE of Tennessee, Appellee,

v.

Charles BARNES, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 6, 1984.

Ralph Brown, Maryville, for appellant.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, David G. Ballard, Dist. Atty. Gen., Steven R. Hawkins, Asst. Dist. Atty. Gen., Maryville, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Charles Barnes, was convicted of involuntary manslaughter, and his punishment was fixed at three (3) years in the State penitentiary. The defendant's sentence was suspended and he was placed on probation.

In this appeal the defendant contests the sufficiency of the evidence, and complains that the trial court erred in excluding evidence of the deceased's reputation for violence. We find merit to these complaints.

The evidence in this case showed that on July 24, 1982, the deceased, Forrest Hinkle, and Steve McKee were at the Cellar Bar. They were drinking and McKee became intoxicated. They had an argument and Hinkle began to brag about his physical prowess. He threatened several times to whip McKee, and at one point, Hinkle took off his belt and wrapped it around his hand. Their arguments generally ended in friendly assertions that they were just kidding.

Later in the evening, the defendant, Charles Barnes, and his girl friend, Debbie

Dorn, came in and sat at the bar with Steve McKee, the brother of Ms. Dorn. Hinkle, first referring to his own physique, commented that the defendant obviously took care of his own body. Hinkle then insisted that McKee owed his sister and the defendant an apology over a remark made by McKee to his sister to the effect that she was running around with a man who looked like a "queer." Ms. Dorn explained to Hinkle that McKee was her brother and that he was only kidding. Nevertheless, Hinkle continued to insist that McKee apologize. Hinkle picked up his belt, which had been lying on the bar and wrapped it around his hand. The belt was equipped with a large metal buckle which was dangling at one end of the belt. Hinkle told McKee again to apologize, and told him if he did not he would give him a whipping he would never forget. Ms. Dorn, McKee and the defendant started to leave but Hinkle said "you're not leaving," and threatened again to whip McKee. Ms. Dorn told Hinkle again that her brother did not owe her an apology, and after some words passed between Hinkle and Ms. Dorn, Hinkle told her he would knock her to "kingdom come." When Hinkle raised his arm as if to strike Ms. Dorn with the belt, the defendant struck Hinkle on the chin. Hinkle fell to the floor. There was some evidence that the defendant then struck two (2) light glancing blows with his foot to Hinkle's head and back; however, the medical testimony showed that these blows did not contribute to Hinkle's death. The pathologist testified that the cause of death was due to extensive hemorrhaging of the brain, caused by Hinkle's head snapping back when he was struck on the chin.

■ The defendant's defense was that he struck Hinkle in defense of Ms. Dorn. Where a person is about to be injured by an assailant, then another person may make resistance sufficient to prevent the offense. T.C.A. § 38-2-103. Further, a person interfering in a dispute, affray, or fight on behalf of another simply steps into the latter's shoes. He may lawfully do in another's defense only what that person could have done, and no more. He stands on the same plane, is entitled to the same rights, and is subject to the same conditions, limitations, and responsibilities as the person defended. And his act must receive the same construction as the act of the person defended would receive if the killing had been committed by that person. Thus, a person is not entitled to the plea of defense of another unless a plea of self-defense would have been available to the person on whose behalf he intervened. In other words, a person can do whatever the person for whom he intervened could have done in his own self-defense. *Murphy v. State*, 188 Tenn. 583, 221 S.W.2d 812 (1949); *Presley v. State*, 161 Tenn. 310, 30 S.W.2d 231 (1930); *Johnson v. State*, 125 Tenn. 420, 143 S.W. 1134 (1912); *Cooper v. State*, 123 Tenn. 37, 138 S.W. 826 (1911).

■ For the defendant's contention that he acted in defense of Ms. Dorn to be successful, the proof must have shown that Ms. Dorn was assaulted in such a way as to induce in her mind a genuine and well-founded belief that she was in actual and imminent danger of death or great bodily harm. We recognize that the validity of a claim of defense of another, like the question of self-defense, is a matter for the jury's determination. *State v. Story*, 608 S.W.2d 599 (Tenn.Cr.App.1980). However, we fail to find in this record sufficient evidence that would authorize the jury in rejecting the defendant's claim that he was acting in the proper and necessary defense of Ms. Dorn.

Unquestionably, the State's evidence as well as that of the defendant shows that Hinkle was the aggressor in this affair. We find no evidence to show that the defendant, McKee or Ms. Dorn brought on the difficulty. Hinkle, without any adequate provocation, initially stated that he would whip McKee, and later stated that he would knock Ms. Dorn to "kingdom come." Hinkle had armed himself with his belt which, as stated, was equipped with a heavy metal buckle. We have examined this belt which was filed as an exhibit, and obviously it constituted a lethal weapon.

The evidence is undisputed that Hinkle wrapped this weapon around his hand and threatened to whip Ms. Dorn. Clearly, when he drew his hand in a motion as if to strike Ms. Dorn, she would have been justified in defending herself from this assault. Since Ms. Dorn would have been justified in defending herself, it necessarily follows then that the defendant had the legal right to intervene and strike Hinkle in an effort to defend Ms. Dorn.

After considering all of the evidence, we find that the evidence is clearly insufficient to show beyond a reasonable doubt the defendant's guilt of involuntary manslaughter. The evidence affirmatively shows that the defendant had a legal right to protect Ms. Dorn, and his acts were neither unlawful nor done in an unlawful manner. We conclude that the evidence in this case does not meet the sufficiency requirements of T.R.A.P. 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We sustain the defendant's evidentiary complaint. His conviction must be reversed and the indictment dismissed.

In view of the ruling that we make in this case, it is unnecessary to cover in depth the defendant's other complaints. Suffice it to say that we also find that the trial court erred in excluding evidence of Hinkle's reputation for violence. In a homicide case, where self-defense is in issue, the general reputation of the deceased for peace and violence in the community is generally admissible. *State v. Butler*, 626 S.W.2d 6 (Tenn.1981); *Broz v. State*, 4 Tenn.Cr.App. 457, 472 S.W.2d 907 (1971). In the present case, such evidence would have been relevant in support of the defendant's theory that the deceased was the aggressor in this affair. *State v. Butler, supra; Little v. State*, 65 Tenn. 490 (1873). Also, had the character evidence been admitted, then, as the defendant insists, the trial court would have been obligated to charge that the jury should have considered it whether Hinkle's reputation for violence was known or unknown to the defendant. As stated, this character evidence would have been relevant in establishing who was the aggressor. *State v. Butler, supra; Little v. State, supra.*

Reversed and dismissed.

WALKER, P.J., and SCOTT, J., concur.