330 S.E.2d 674

**STATE of West Virginia**

v.

**Robert SAUNDERS.**

No. 16372.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1985.

Decided May 29, 1985.

Catherine McMullen, Asst. Atty. Gen., Charleston, for appellee.

A. David Abrams, Jr., Abrams, Byron, Henderson & Richmond, Beckley, for appellant.

NEELY, Chief Justice:

"The Hill" in downtown Beckley, West Virginia is a rough part of town. Its bars, poolrooms, speakeasies, and disco joints cater to an evening sub-culture that emerges at night to the dismay of the ordinary, law-abiding citizen. It was outside of one of "The Hill's" establishments, the Nite Flite, that on 29 November 1981 the appellant, Robert Saunders, fatally shot Phillip Kincannon in the left buttocks, a wound from which Mr. Kincannon later bled to death on a pool table. Our appellant insists that by shooting Mr. Kincannon he was defending his brother, James Saunders. He argues that his conviction of first-degree murder and sentence of life imprisonment with a recommendation of mercy should be reversed because, *inter alia*, the circuit court refused an instruction on defense of another as an extension of the affirmative defense of self-defense.

## I.

Confusion and conflicting testimony surround the death of Mr. Kincannon. It appears, however, that the appellant's brother, James Saunders, was involved in a series of fights with the Kincannon brothers, Phillip and Brian. During one of these

altercations, Brian Kincannon, assisted by his brother, wrestled James Saunders to the ground and pinned him in a full nelson.[1]

Our appellant, while not directly involved in the melee between his brother and the Kincannons, had participated in much of the verbal foreplay that led to the fracas. That night, when Robert Saunders went to the Nite Flite his brother James and Phillip Kincannon were exchanging angry words. (James' lady companion, who accompanied him, had that evening adorned herself in a silken scarf presented to her by Phillip Kincannon—a former beau of hers; this infuriated Mr. Kincannon). Robert Saunders testified that when he intervened on his brother's behalf, Phillip Kincannon retreated to recruit his brother Brian to his aid. Fearing a brawl, the Nite Flite's owner escorted the Saunders brothers outside.

When the Saunders emerged from the bar the Kincannons confronted them. James was attacked and overwhelmed. Robert—a slight young man weighing under 130 pounds stood nervously aside. But when James was on the ground, tightly held by Phillip Kincannon, and being "frisked" for a weapon that he did not have, Robert Saunders panicked. The appellant and two other witnesses subsequently testified that Brian Kincannon was exclaiming that he would kill James with James' own (non-existent) weapon.

The appellant at this time insists that he was afraid for his brother's life. He knew that one of the witnesses to the fight, Mr. Ronnie Campbell kept a gun in his automobile. Suddenly he darted over to Mr. Campbell's vehicle to extract the .357-calibre Magnum revolver. Mr. Campbell testified that although he snatched the gun from Mr. Saunders immediately and placed it under his belt, the appellant suddenly grabbed it from him and fired a shot over the heads of the combatants. The appellant testified that he then lowered the revolver, aimed at the deceased's leg and fired. He claims he did not realize that he hit the deceased but rather became frightened, dropped the revolver and fled. A few hours later that same night he voluntarily turned himself into the police.

The appellant presents this Court with five assignments of error. Four of these assignments contend that various instructions given by the court either are not supported by the evidence and should have been refused or were inaccurate statements of the law in West Virginia. The fifth assignment asserts that the defendant was ineffectively assisted by counsel during trial. This Court reverses on the basis of the fourth assignment of error, that which deals with the refusal of the court to give any of the appellants instructions on the issue of defense of another.

## II.

Over one hundred years ago this Court held that the right of self-defense may be exercised in behalf of a brother, or of a stranger. In 1883, this Court stated:

What one may lawfully do in defence of himself—when threatened with death or great bodily harm, he may do in behalf of a brother; but if the brother was in fault in provoking an assault, that brother must retreat as far as he safely can, before his brother would be justified in taking the life of his assailant in his defence of the brother. But if the brother was so drunk as not to be mentally able to know his duty to retreat, or was physically unable to retreat, a brother is not bound to stand by and see him killed or suffer great bodily harm, because he does not under such circumstances retreat. It is only the faultless, who are exempt from the necessity of retreating while acting in self-defence. Those in fault must retreat, if able to do so; if from the fierceness of the attack or for other reasons they are unable to retreat, they will be excused by the law for not doing so. *State of W. Va. v. Greer*, 22

---

**1.** A full nelson is an illegal wrestling hold that enables the holder to snap with relative ease his opponent's cervical vertebrae.

W.Va. 800, at 819 (1883). [Footnote omitted by this Court.][2]

In the case before us the lower court refused any instructions on defense of another and apparently proceeded under the erroneous assumption that defense of another is not law in West Virginia. The court accordingly excluded the following defense instruction: "The court instructs you that if you believe from the evidence that Robert Saunders believed that his brother was about to be killed or in danger of great bodily harm, he had a right to use force to prevent his brother from being killed or injured."

The State counters that the court's refusal to give instructions in regard to the defense of another was harmless error. It notes that an unnumbered defendant's instruction, that was given, informed the jury that if the defendant's use of a dangerous and deadly weapon resulted from sudden passion brought about by his brother's being beaten, assaulted, and struck by the deceased and his brother without fault on the part of the defendant, then malice cannot be presumed. The State maintains that had the jury believed that the appellant was acting in defense of himself or his brother, a verdict of voluntary manslaughter would have been returned. Because the jury did not believe that contention, obviously the jury found that the appellant unlawfully, feloniously and maliciously, etc. murdered the deceased and thus the conviction of first-degree murder ought be affirmed by this Court.

■ The defense instruction to which the State refers is not improper but it is insufficient to explain to the jury the affirmative defense of defense of another, a defense available in this State and in many other jurisdictions. As such the instruction on which the State relies as an adequate statement of the *right to defend another* was misleading, confusing, and hence inadequate *on the issue of defense of another*. "Instructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given." Syllabus Point 3, *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978). *See also* Syl.Pt. 2, *State v. Romine*, 166 W.Va. 135, 272 S.E.2d 680 (1980).

Although this Court has not dealt directly in recent years with the defense of another defense, we are not bereft totally of collateral precedent. In *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971), this Court was presented with a situation in which a tavern owner fatally shot two patrons who were involved in a barroom brawl with a third customer. The Court failed to address directly the question of defense of another because it determined there was no necessity for the tavern owner to fire any shots other than his first two warning shots to end the disturbance. Although the tavern owner pleaded that he shot the patrons to protect, in addition to himself, the third party from injury or death, the evidence indicated that when he shot the fatal rounds the fight was over and "there was no necessity for him to act as he did to protect Marcum from danger of death or serious injury." *State v. Collins*, 154 W.Va. at 781, 180 S.E.2d at 61.

The Court's holding in *Collins* prompted a lengthy dissent by Judge Browning. The judge would have reversed the tavern owner's conviction because of the trial court's failure to include an instruction on defense of another. He noted that defense of another was still good law in West Virginia, 154 W.Va. at 802–03, 180 S.E.2d at 73–74. The Court, however, held that since the fight had already ended, an instruction on defense of another would have misled the jury. The Court added, somewhat gratuitously, that:

... it is unnecessary to consider or determine whether the [excluded] instruction correctly states the law as to the right of a person to intervene to protect another person whose life is in danger and as to the degree of force he

---

2. Although the West Virginia case law on defense of another is sparse, the *Greer* case surfaces occasionally and is no antiquated relic of case law that may be set aside quietly and forgotten. *See State v. Wisman*, 93 W.Va. 183, at 194, 116 S.E. 698 (1923); *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

may use to repel the attack of the assailant; and those questions are not discussed, considered or determined." *State v. Collins,* 154 W.Va. at 782, 180 S.E.2d at 61.

In discussing the use of deadly force by the occupant of a dwelling on an unlawful intruder who threatens imminent physical violence or the commission of a felony, this Court has stated that "[t]he taking of life to prevent the commission of a felony, however, is not limited to self-defense in the home, but is part of a more general rule relating to crime prevention." *State v. W.J.B.,* 166 W.Va. 602, at 609, 276 S.E.2d 550, at 555 (1981). In *W.J.B.,* this Court opined that: "[w]e have recognized the accepted rule that the defendant may interpose the defense of self-defense in protecting a member of his family as well as in protecting himself." 166 W.Va. at 613, 276 S.E.2d at 557.

Other jurisdictions grant that one has the right to intervene on behalf of another in certain situations. The right to defense of another usually falls under the rubric of self-defense. One simply steps into the shoes of the victim and is able to do only as much as the victim himself would lawfully be permitted to do. *See State v. Barnes,* 675 S.W.2d 195 (Tenn.Crim.App.1984); *State v. Matthews,* 459 So.2d 40 (La.App. 1 Cir.1984), *cause remanded by State v. Matthews,* 464 So.2d 298 (1985); *Commonwealth v. Gray,* 441 Pa. 91, 271 A.2d 486, at 488 (1970); *People v. Young,* 12 A.D.2d 262, 210 N.Y.S.2d 358 (1961).

In the recent *Barnes* case, the Tennessee Court of Criminal Appeals dismissed a conviction for involuntary manslaughter where the appellant's defense was that he struck the deceased in defense of a lady who was being assaulted. The court stated: "A person can do whatever the person for whom he intervenes could have done in his own self-defense." *State v. Barnes,* 675 S.W.2d at 196.

▪ The validity of a claim of defense of another, like the question of self-defense, is properly a matter for the jury's determination. This Court has frequently stated, in cases of self-defense, that the

prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense in order successfully to overcome the defendant's affirmative defense. *See* Syl.Pt. 4, *State v. Clark,* 171 W.Va. 74, 297 S.E.2d 849 (1982); *State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550 (1981); Syl.Pt. 4, *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978). In this case, the jury ought to have been provided with the proffered instruction on defense of another because the defense exists in West Virginia and because, in this case, there is sufficient evidence to allow the jury to consider whether the appellant believed the Kincannons were going to injure seriously or even kill his brother.

Accordingly we reverse the circuit court and remand this case for a new trial consistent with this opinion. Because the appellant will receive a new trial, it's unnecessary to address the appellant's other assignments of error.

Reversed and Remanded.