356 S.E.2d 862

**STATE of West Virginia**

v.

**Margaret BAKER.**

**No. 17188.**

Supreme Court of Appeals of
West Virginia.

May 5, 1987.

Gayle Fidler, Asst. Atty. Gen., for appellant.

Joseph A. Colosi, Welch, for appellee.

MILLER, Justice:

The defendant, Margaret Baker, appeals her conviction for voluntary manslaughter and assigns as primary error that she was entitled to a judgment of acquittal as self-defense was shown as a matter of law. We agree.

The deceased, George Swims, was killed at a bar operated by the defendant and her friend, a Selva Rich. The autopsy revealed that the deceased had five gunshot wounds in various parts of his body. He had been drinking and, at the autopsy, he was found to have 0.18 percent alcohol in his blood.

The argument that led to the fatal shooting occurred after the deceased had demanded some beer and had been refused service by the bartender, an Orville Cottle. There was substantial evidence that the deceased was intoxicated when he came into the bar. He pushed his way past the bartender and said he was going to get his own beer. One of the patrons went to get Mr. Rich who owned the bar and who lived downstairs. When Mr. Rich came into the bar, he advised the deceased to leave. An argument ensued with the deceased striking Mr. Rich in the stomach with a door he had pulled off a beer cooler.

At this point, Mr. Rich struck the deceased with a pistol, whereupon the deceased began to choke Mr. Rich and drag him toward the storeroom. Mr. Rich's gun, a .38 caliber pistol, had fallen to the floor during this struggle. The defendant, who had been yelling at the deceased to leave Mr. Rich alone, picked the gun up and fired a warning shot.

The deceased then released Mr. Rich and started toward the defendant stating, "I'll kill you Bitch. I'll kill you, Bitch." She shot the deceased as he continued to come toward her and she fired several more times in rapid succession. The defendant was backing away and at one point stated, "I don't want to hurt you." After the

shooting, the defendant ran out of the bar and into the downstairs apartment where she lived with Mr. Rich. The deceased walked out of the bar and collapsed outside. He was still alive when the emergency vehicle arrived, but died after he reached the hospital.

Both the defendant and other witnesses testified as to the violent reputation of the deceased. The defendant testified that she believed the deceased intended to kill her or to inflict serious bodily injury. The defendant was about fifty-four years of age at the time and was of a rather small stature. The deceased was in his twenties and was considerably bigger, weighing approximately two hundred fifteen pounds.

The pivotal question on the self-defense issue here is whether under the circumstances, the defendant was entitled as a matter of law to employ deadly force against the deceased who was unarmed. We spoke to this point in *State v. W.J.B.*, 166 W.Va. 602, 608, 276 S.E.2d 550, 554 (1981):

> "The more particular statement as to the amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return." (Citations omitted).

We can assume, since neither side argues to the contrary, that the defendant had a right to intervene in the initial fight between her live-in companion, Mr. Rich, and the deceased. *See State v. Saunders*, 175 W.Va. 16, 330 S.E.2d 674 (1985); *State v. Wilson*, 145 W.Va. 261, 114 S.E.2d 465 (1960).[1] It was this intervention that caused the deceased to start after the defendant. Certainly, the defendant could consider the attack on Mr. Rich in assessing her degree of vulnerability.

The State in support of its argument that self-defense was not shown as a matter of law relies on *State v. Clark*, 175 W.Va. 58, 331 S.E.2d 496 (1985). There, the defendant had attempted to intervene in an argument that the victim was having with a third party. As the defendant approached the victim, who was an older and smaller man, the victim pulled out a pistol and shot the defendant causing two superficial wounds.

The evidence was in conflict as to how the victim was killed. The State's evidence indicated the defendant fell on the victim and was able to seize the gun and fire three shots into the victim's abdominal area. The defendant testified that in the course of wrestling with the victim, the gun was discharged. We concluded in *Clark*, 175 W.Va. at 62, 331 S.E.2d at 500, that the issue of self-defense could not be resolved as a matter of law because "a person is not justified in shooting or employing a deadly weapon after the adversary has been disarmed or disabled."

Here, there was no evidence suggesting that at any point the deceased was disabled such that the defendant could be said to have no reasonable expectation that she would not be subject to serious bodily harm. Her testimony indicated that after the shooting, the deceased was still coming toward her. She testified that when she fled the bar she thought he was still pursuing her. It was for this reason that she locked herself in her apartment.

While the defendant places considerable reliance on *State v. W.J.B., supra*, we do not consider it to be controlling. There, a seventeen-year-old boy shot the victim who had broken into the front door of his family home. There had been a history of previous violence with the victim when the defendant's fifteen-year-old sister had refused to date the victim, including a breaking into the home that same evening. The case turned on the special right accorded the occupants of a home to utilize deadly

---

1. In these cases dealing with the assertion of self-defense in protecting a family member or close friend, the actual homicide occurred in protecting them from death or serious bodily injury. Here, the deceased had broken off his attack on Mr. Rich and had started toward the defendant who had warned him by firing a shot into the floor. It appears that this intervention deflected the deceased's anger from Mr. Rich to the defendant.

force, which we explained in Syllabus Point 2:

> "The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant reasonably believes deadly force is necessary."[2]

While we recognize that ordinarily the use of self-defense is a jury question, nevertheless, as we explained in Syllabus Point 5 of *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927), if the jury's verdict is manifestly against the weight of the evidence, then it must be set aside: "It is peculiarly within the province of the jury to weigh the evidence upon the question of self-defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." *See also State v. Clark, supra.* This is particularly true where the State bears the burden of proving the lack of self-defense beyond a reasonable doubt, as we pointed out in Syllabus Point 4 of *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978):

> "Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."

The trial court was aware of the meagerness of the State's evidence on the self-defense issue and ruled as a matter of law that there was no evidence to warrant an instruction on first- and second-degree murder. Its only error was in not granting the defendant's motion for a directed verdict made at the close of all the evidence. Other jurisdictions have reached a similar result on analogous facts. *People v. Lenzi*, 41 Ill.App.3d 825, 355 N.E.2d 153 (1976); *Commonwealth v. Fisher*, 491 Pa. 231, 420 A.2d 427 (1980); *State v. Hendrix*, 270 S.C. 653, 244 S.E.2d 503 (1978).

In view of the fact that the defendant was entitled to a judgment of acquittal, no retrial is permitted and the case is remanded for the entry of such judgment. *See State v. W.J.B., supra.*

Reversed and Remanded.

---

**2.** The defendant did not urge below nor on appeal that as the co-owner of the bar she had a special standing to utilize self-defense similar to the occupant of a home. *See* Syllabus Point 7, *State v. Laura*, 93 W.Va. 250, 116 S.E. 251 (1923). *See also State v. Sharpe,* 18 N.C.App. 136, 196 S.E.2d 371 (1973); *Commonwealth v. Johnson,* 438 Pa. 485, 263 A.2d 376 (1970); Annot., 41 A.L.R.3d 584 (1972). As a consequence, we do not address this aspect of the self-defense rule.