# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 3, 2009

## STATE OF TENNESSEE v. ANDRE PERKINS

**Direct Appeal from the Criminal Court of Shelby County**
**No. 06-01348    John P. Colton, Jr., Judge**

---

**No. W2007-02774-CCA-R3-CD  - Filed June 17, 2009**

---

The defendant, Andre Perkins, was convicted by a Shelby County jury of one count of voluntary manslaughter, a Class C felony, and one count of theft of property over $1000, a Class D felony. The trial court subsequently sentenced the defendant as a Range I, standard offender to consecutive sentences of six years and four years for the respective convictions. On appeal, the defendant asserts that: (1) the evidence is insufficient to support the convictions; and (2) the sentences imposed are excessive based upon the erroneous application of enhancement factors, the failure to apply mitigating factors, and the imposition of consecutive sentencing. Following review of the record, we conclude that the evidence is sufficient to support the conviction for voluntary manslaughter, and we affirm that conviction. However, review of the record reveals that the State failed to establish the element of value with regard to the theft conviction. As such, we modify the conviction to one for theft of property less than $500, a Class A misdemeanor, and remand to the trial court for re-sentencing. With regard to the sentence for voluntary manslaughter, we conclude that the trial court erred in its application of two enhancement factors. The record does support the trial court's refusal to apply mitigating factors and its imposition of consecutive sentencing. Nonetheless, because of the errors which occurred in sentencing, we remand the case for re-sentencing in accordance with the principles set forth in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Modified in Part, and Remanded for Re-sentencing**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Phyllis Aluko, Kathy Kent, and Lisa Kutch, Assistant Public Defenders, for the appellant, Andre Perkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

The defendant's convictions resulted from his killing of the victim, Willie Bailey, and the subsequent theft of the victim's Oldsmobile Alero. The proof established that on October 16, 2005, the victim's stepson stopped by the victim's home to pick up some personal belongings and discovered the victim's body in the bedroom. The victim had been stabbed repeatedly, and "there was blood everywhere." The victim's stepson went outside the house and called 911, noting at that time that his stepfather's Oldsmobile Alero was not in the driveway.

Memphis police officers responded to the scene and found no signs of forced entry. While Officer Luckett was investigating the murder scene, he received a call regarding a suspicious male in the neighborhood. He went outside the victim's home and was approached by the male, later identified as the defendant, who inquired as to what had happened. The defendant made small talk with the officer and expressed an interest in attending the police academy.

Blood spatter analysis results indicated that the victim had been stabbed in multiple locations throughout the bedroom. Moreover, diluted blood was also found in the bathroom, which was indicative of an attempt to clean up. DNA analysis conducted upon the various blood samples collected indicated only the presence of the victim's blood. The medical examiner found that the victim suffered eight stab wounds which damaged his right external jugular vein, sternum, subclavian vein, liver, large intestine, stomach, pancreas, left lung, and left shoulder. Additionally, the victim had incised wounds on his left forearm, left knee, and various bruises and abrasions.

A few days after the murder, the victim's car was found parked at Kirby and Shelby Road. Officers responded to the scene, and a tracking device was placed on the car. When the device was activated a short time later, officers tracked the car, which was being driven by the defendant. He was placed under arrest and taken for questioning. The defendant made an initial statement to police indicating that he did not know the victim, had never been inside his home, and that he had gotten the victim's car from Malcolm Ford. Police then began an investigation based upon this information but discovered that Mr. Ford had an alibi and was not involved in the crime. After learning this information, police interviewed the defendant a second time. In his subsequent statement, he admitted that he had killed the victim.

In his statement, the eighteen-year-old defendant indicated that he had met the victim days earlier in the victim's neighborhood. According to the defendant, the victim approached him and propositioned him for oral sex in exchange for $50. The defendant agreed, and the two returned together to the victim's home. Three days later, the defendant again encountered the victim in the neighborhood, and the victim asked the defendant if he wanted to have sex again. The defendant agreed, and the two returned to the victim's home. After engaging in various sexual activities for which the defendant received $70, the victim asked the defendant to perform oral sex. When the defendant refused, the victim became physical, pushing the defendant onto the bed and using his weight to hold him down. The defendant repeatedly asked the victim to stop, but he would not. The defendant struck at the victim in order to force him off.

At some point during the encounter, the victim grabbed a machete-like knife located on the television, and the defendant cooperated for a period after the victim pressed the knife to the defendant's neck. However, when the defendant was "nipped" by the knife, he began fighting back. During the ensuing struggle, the victim was stabbed in the back but continued fighting with the defendant. According to the defendant, he got possession of the knife and "just started swinging." Afterwards, the defendant stated that he panicked, took the victim's car keys, and left in the Oldsmobile Alero.

The defendant was indicted by a Shelby County grand jury for one count of felony murder and one count of theft over $1000. Following a jury trial, he was convicted of the lesser included offense of voluntary manslaughter and theft over $1000. A sentencing hearing was held, after which the trial court imposed consecutive sentences of six years for the manslaughter conviction and four years for the theft conviction. After the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant has raised two issues for our review. First, he contends that the evidence is insufficient to support his two convictions. Second, he argues that the sentences imposed are excessive due to the trial court's misapplication of enhancement factors, failure to apply mitigating factors, and imposition of consecutive sentencing.

**I. Sufficiency of the Evidence**

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or re-evaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct

evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

### a. Voluntary Manslaughter

The defendant contends that the evidence presented was insufficient to support his conviction for voluntary manslaughter because it failed to disprove his theory of self-defense. Voluntary manslaughter is defined as the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a) (2006). The defendant does not dispute that he did, in fact, kill the victim in a state of passion; rather, his only argument is that the jury erroneously rejected his claim of self-defense because the only evidence presented, namely the defendant's statement to police, established that the decision to use deadly force against the victim was justified by the defendant's fear of a man who held a knife to his neck.

Our statute provides that a person who has a reasonable belief that there is an imminent danger of death or serious bodily injury, the danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time, and the belief of danger is founded upon reasonable grounds is justified in using force against an individual. T.C.A. §§ 39-11-601 and -611 (2006). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). The question of whether a defendant has acted in self-defense is one for the jury's determination. *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994). In order to prevail in an appeal of the issue of a jury's rejection of a self-defense claim, the defendant "must show that the evidence relative to justification such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *Id*. at 743.

While acknowledging that the validity of a self-defense claim is a jury question, the defendant contends that our review is "an extensive enough review" to find in this case that the evidence was not sufficient to rebut the claim of self-defense beyond a reasonable doubt. He relies upon *State v. Barnes*, 675 S.W.2d 195, 196 (Tenn. Crim. App. 1984), a case in which this court found insufficient evidence to establish the crime of involuntary manslaughter based upon an asserted defense of a third person. The facts of that case, however, are distinguishable from the instant case. In the instant case, the defendant's statement indicating that the victim was the first aggressor and was attempting to force himself sexually on the defendant was placed before the jury. Additionally, the evidence was placed before the jury that the defendant was stabbed eight times, in addition to having incised cuts, bruises, and abrasions on his body. Moreover, evidence was introduced that the defendant, after killing the victim, proceeded to take his car. Evidence was introduced that the defendant gave a prior inconsistent statement to the police regarding his involvement in the crime and that he attempted to place the blame on another individual. Finally, evidence was introduced that the defendant, on the day following the killing, returned to the crime scene and questioned police about what had happened. This evidence was all placed before the jury, and instructions were given with regard to the crimes charged, as well as on self-defense. The jury,

as was their prerogative, chose not to accredit the defendant's claim of self-defense. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) ("It is well settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact.").

That being said, we conclude that the evidence, viewed in the light most favorable to the State, is sufficient to support the conviction for voluntary manslaughter. Based upon the defendant's own statement to police, he was provoked by the victim's attempt to force sexual advances upon him, as well as the victim's holding him at knife point. The evidence establishes that the defendant, in a state of passion, just "started swinging" the knife he was able to gain control of. This resulted in eight deep stab wounds to the victim, which caused his death. The defendant's issue is without merit.

### b. Theft of Property over $1000

Next, the defendant contests his conviction for theft of property over $1000, specifically asserting that the State failed to establish beyond a reasonable doubt the element of value. "A person commits theft of property if, with intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006). Theft of property is a Class D felony if the value of the property obtained is $1000 or more but less than $10,000. T.C.A. § 39-14-105(3) (2006). Hence, the valuation of the property is an element of the theft that the State is required to prove beyond a reasonable doubt. *State v. Loverson*, W1999-01750-CCA-R3-CD (Tenn. Crim. App., at Jackson, Oct. 23, 2000); *State v. Mike Wayne Tate*, No. 03C01-9204-CR-127 (Tenn. Crim. App., at Knoxville, Mar. 4, 1993). Accordingly, in order to sustain a guilty verdict, the State was required to prove the value of the Oldsmobile Alero found in the possession of the defendant. Value is defined as: (1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense. T.C.A. § 39-11-106(a)(36)(A) (2006).

As argued by the defendant and conceded by the State on appeal, the State failed to put forth any evidence with regard to the value of the stolen automobile. The only testimony elicited was from the victim's stepson who was not aware of the age of the car but testified that the victim had purchased the car used. The victim's stepson was not asked for an opinion as to the value of the automobile. Thus, the defendant's conviction for theft of property over $1000 may not stand.

As noted in *Loverson*, the value of a car is not a fact that a court can take jurisdictional notice of because the value of the car varies based upon its condition. *Loverson*, No. W1999-01750-CCA-R3-CD. However, the court went on to note that, "[w]hile this Court may not presume the range of value of [a] vehicle, we can assume that [every] vehicle has monetary value over zero." As such, while we conclude that the evidence is insufficient to support a conviction for theft of property over $1000, as the value of the vehicle was not established by the evidence. The proper remedy is to modify the conviction to one of theft of property valued at $500 or less, a Class A misdemeanor. *See* T.C.A. § 39-14-105(1).

## II. Sentencing

The defendant also asserts on appeal that the sentences imposed for his convictions are excessive. He challenges the trial court's application of enhancement factors, failure to apply mitigating factors, and imposition of consecutive sentencing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45. In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and argument as to the sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee's sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

The defendant's conduct in this case occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." . . . Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," . . . a punishment sufficient "to prevent crime and promote respect for the law," . . . and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]"

*Id.* (footnote and citations omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* Under the current sentencing law, the trial

court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id.* Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentence. *Id.* at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the enhancing and mitigating factors found, the specific facts supporting each enhancement and mitigating factor found, and the method by which the mitigating and enhancing factors have been evaluated and balanced in determining the sentence. *Id.* at 343. The trial court may apply enhancement factors so long as they are "appropriate for the offense" and "not already an essential element of the offense." T.C.A. § 40-35-114. If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is *de novo*. *Carter*, 254 S.W.3d at 345.

At this junction, based upon our modification of the defendant's theft of property conviction to a misdemeanor and remand for re-sentencing, we note that review of the four-year sentence imposed for the original theft of property conviction over $1000 is unnecessary. Nonetheless, we would note that it appears that the defendant's assertions that all the enhancement factors applied to this sentence, with the exception of prior criminal history, were done so in error, as it was a separate and distinct offense from the homicide, no deadly weapon was used in its commission, and it is no longer a felony conviction from which death resulted.

**(a) Enhancement Factors**

In setting the defendant's sentence for voluntary manslaughter, a Class C felony, for which the applicable range of punishment is three to six years for a Range I offender, the trial court imposed the maximum sentence of six years. *See* T.C.A. § 40-35-112(a)(3) (2006). In arriving at that sentence, the trial court found four applicable enhancement factors, those being: (1) the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range applied; (2) the defendant possessed or displayed a deadly weapon during the commission of the offense; (3) the defendant had no hesitation about committing a crime where the risk to human life was high; and (4) the felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person, and the defendant had previously been convicted of a felony that resulted in death or bodily injury. *See* T.C.A. § 40-35-114 (1), (9), (10), (11) (2006).

On appeal, the defendant contends that the trial court erred in its application of factors (10) and (11). The State concedes that the trial court erred in applying the two factors, and we agree. Case law has established that in order to apply the factor involving no hesitation about committing a crime when the risk to human life is high, the case must involve a situation where the proof establishes that there is a high risk to the life of persons other than the victim. *State v. Hicks*, 868

S.W.2d 729, 732 (Tenn. Crim. App. 1993). The proof in this case failed to establish any risk to a person other than the victim as he and the defendant were alone inside the home. Moreover, because this case involved a homicide of which death was an essential element of the offense, the trial court should not have relied upon the factor that the felony resulted in death or serious bodily injury.

The defendant also argues that the court should not have applied the factor that the defendant possessed a deadly weapon because the evidence suggests that the defendant's use of the knife came as a result of his removing it from the victim to protect himself. We disagree. While the defendant's statement does indicate that the victim was the initial aggressor, the evidence indicates that the defendant came into possession of the machete-like knife and proceeded to repeatedly stab the victim, resulting in his death. Application of this factor was not error.

The defendant does not dispute that the trial court correctly applied the factor of prior criminal history, and we agree that it was appropriate. The record indicates a lengthy juvenile history dating back to 1999, with adjudications for possession of cocaine with intent to manufacture, deliver, or sell; multiple thefts of property; and a disorderly conduct.

The State concedes that misapplication of the two factors results in this court review of the record being *de novo* but argues that the two remaining factors support the imposed sentence and asks us to affirm. However, under the circumstances of this case, namely that the case is already being remanded for re-sentencing with regard to the theft conviction and because the trial court failed to specify the weight given to each of the factors, two of which are no longer applicable, we choose to remand the case for re-sentencing in compliance with this opinion.

### (b) Mitigating Factors

Next, the defendant contends that the trial court erred in failing to find the following four mitigating factors: (1) the defendant acted under strong provocation; (2) substantial grounds existed to excuse or justify the defendant's criminal conduct, though failing to establish a defense; (3) the defendant, because of his youth, lacked substantial judgment in committing the offense; and (4) the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. *See* T.C.A. § 40-35-113 (2), (3), (6), (11) (2006). According to the defendant, the evidence presented at trial established that he acted under a reasonable belief that he was in imminent danger, as no proof was presented to discount his version of what occurred inside the victim's home. He further argues that the circumstances were unusual in that the victim had hired the eighteen-year-old defendant to act as a prostitute and that the defendant acted only when the victim attempted to force compliance with a sexual act. He contends that this behavior does not demonstrate a sustained intent to violate the law. However, the defendant cites to no case law which would support application of these factors.

We agree with the State that the trial court was not required to find that the defendant acted under strong provocation or that substantial grounds existed tending to excuse the criminal conduct. The defendant's version of the events was already accredited by the jury in their conviction of the

lesser included offense of voluntary manslaughter, of which one element is provocation. Moreover, we fail to find on the record any substantial grounds which would justify the criminal conduct of repeatedly stabbing the victim, as the jury rejected the defendant's theory of self-defense. Likewise, we cannot conclude that the circumstances under which the crime occurred were so unusual that it is unlikely that a sustained intent to violate the law motivated the conduct. As noted by the State, the fact that the defendant was in the victim's home as a prostitute was not necessarily "unusual," as it had occurred previously. Finally, we also conclude that the defendant has failed to establish the factor with regard to youth. The defendant has failed to point to any fact, other than his age, which established that he lacked substantial judgment. In considering this factor, a court should consider not only a defendant's age, but also his "education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *State v. Turner*, 41 S.W.3d 663, 674 (Tenn. Crim. App. 2000). Because the defendant has failed to establish that these mitigating factors apply, we find no error in the trial court's refusal to consider them.

### (c) Consecutive Sentencing

Finally, the defendant contends that the trial court erred in ordering that the two sentences be served consecutively. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is an offender whose record of criminal activity is extensive" or that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" T.C.A. § 40-35-115(b)(2), (4) (2006). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. T.C.A. § 40-35-102(1), -103(2). Additionally, before imposing consecutive sentencing on the basis that the defendant is a dangerous offender, the court must determine (1) if the resulting sentence was reasonably related to the severity of the crimes and (2) if consecutive sentences were necessary to protect the public from further criminal conduct. *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

In imposing consecutive sentencing in this case, the trial court stated as follows:

> The Court, in consecutive sentencing, finds that the defendant is an offender whose record of criminal activity is extensive; that the defendant is a dangerous offender; and the circumstances surrounding the commission of the offense are aggravated. The confinement for an extended period of time is necessary to protect society from this defendant's unwillingness to lead a productive life, and the aggregate length of sentence should be reasonable and relates to this offense.

Based upon these statements, the court found two relevant criteria which supported the imposition of consecutive sentencing, either of which, standing alone, would be sufficient to justify the decision. On appeal, the defendant contests both findings. With regard to the finding of an

extensive criminal history, his entire argument is that "there is insufficient support in the record to support the trial court's findings of fact that the defendant has an extensive record of criminal activity and that the circumstances surrounding the commission of the offense are aggravated." We disagree. The record before us indicates that the defendant, eighteen years old at the time of the commission of this crime, had a juvenile record which spanned back to 1999 and included adjudications for possession of cocaine with intent to manufacture, deliver or sell; theft over $1000; theft over $500; and disorderly conduct. This is sufficient to support the trial court's findings.

With regard to the dangerous offender criteria, the defendant argues that the trial court failed to make a finding that consecutive sentencing was necessary "to protect the public from further criminal acts" by the defendant. He argues that the court's finding that consecutive sentencing was necessary "to protect society from the defendant's unwillingness to lead a productive life is insufficient." We disagree and reject the argument. While the trial court did not use the requisite words, it is clear from a reading of the statements made that the court considered the principles and found that the defendant was a dangerous offender. Moreover, the record before us supports the finding. The defendant, who was at the time acting as a prostitute, repeatedly stabbed the victim with a machete-like knife, ran from the "very bloody" scene, took the victim's car, returned to the crime scene the following day and spoke with officers, lied to police when initially captured, and incriminated an innocent person in his statement. Regardless, we would note, that even if the trial court did err in its conclusion, consecutive sentencing would still be appropriate based solely upon the finding that the defendant had an extensive criminal history. Thus, this issue is without merit.

## CONCLUSION

Based upon the foregoing, the conviction for voluntary manslaughter is affirmed, but the conviction for theft of property over $1000 is modified to one of theft of property less than $500. The case is remanded to the trial court for re-sentencing.

_____
JOHN EVERETT WILLIAMS, JUDGE