415 S.E.2d 891

**STATE of West Virginia, Appellee,**

v.

**Raymond C. ASBURY, Jr., Appellant.**

No. 20486.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 15, 1992.
Decided March 20, 1992.

L. Robert Pettini, Stephen D. Warner, First Judicial Public Defender Corp., Wheeling, for appellant.

Mario J. Palumbo, Atty. Gen., Joanna I. Tabit, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

Raymond C. Asbury, Jr. appeals a jury verdict in the Circuit Court of Ohio County

finding him guilty of unlawful assault. On appeal, Mr. Asbury maintains that reversal of his conviction is required by the following assignments of errors: (1) the circuit court erred in refusing to instruct the jury on the law of self-defense; (2) the circuit court erred in allowing presentation of and argument about Mrs. Asbury's grant of immunity; (3) the State's closing argument resulted in manifest injustice or clear prejudice to the accused; and (4) the State improperly elicited testimony known to be false during the redirect examination of Dr. William Gelinas. Based on our review of the record, we find that Mr. Asbury's assignments of error are without merit and affirm the order of the circuit court.

About 2:30 a.m. on October 15, 1989, Mr. Asbury went to Zane's Athletic Club where his former wife, as part of her bartending job, was closing the bar.[1] The victim was a customer, Kevin Miracle, who after arriving at the bar about 9:30 p.m., had spent the evening drinking bourbon. Mr. Miracle, who was not employed by the bar, said that in exchange for free drinks he swept the floor, restocked the coolers and performed other small jobs. After the bar closed Mr. Miracle left at the same time as Mrs. Asbury who went to her car. Mr. Miracle, who lived in an apartment next to the club, started to take the garbage to the dumpster around back. However, Mr. Asbury got out of his car after his thirteen year old son who was with him identified Mr. Miracle as the person having an affair with Mrs. Asbury. Although Mr. Miracle denied that he was dating Mrs. Asbury, Mr. Asbury approached Mr. Miracle with closed fists and hit Mr. Miracle several times.[2] Mr. Miracle said he tried to explain that he was "the wrong guy" and kept backing away while Mr. Asbury hit him.

At some point Mr. Miracle fell and something hit him in the eye.[3] Mr. Miracle said that Mr. Asbury then kicked him in the face with steel-toed shoes and shouted "I'm going to kill you" and "I'll teach you to mess around with somebody's wife."

The assault continued for about 15 or 20 minutes and awoke at least two neighbors. One neighbor testified that Mr. Asbury was kicking the victim and the other neighbor testified that Mr. Asbury was landing more blows. Afterwards Mr. Miracle went into his apartment, but left his keys in the door. Mr. Asbury also left, but returned shortly thereafter with Theresa Montgomery, his step-daughter, to check on Mr. Miracle. Mr. Asbury told Ms. Montgomery that he had "beat Kevin [Miracle] up" and "I think I killed him." When they arrived, Ms. Montgomery used the keys in the door to go into Mr. Miracle's apartment but she kept Mr. Asbury outside. From outside the apartment, Mr. Asbury shouted that he had some of Mr. Miracle's blood on him and now he wanted "to finish the job." Ms. Montgomery called an ambulance.

Mr. Miracle had severe facial lacerations and bruising and required plastic surgery to repair his left eyelid that was almost completely removed.

Mr. Asbury was indicted for unlawful assault and a jury found him guilty of unlawful assault. Mr. Asbury was sentenced to one year in the Ohio County Jail and ordered to pay $6,367.79 in restitution to the victim or to the Crime Victim's Restitution Fund.

## I

First, Mr. Asbury argues that the circuit court erred by refusing to give an instruction on self-defense. The circuit court refused to give the instruction because there was no evidence that the victim, Mr. Miracle, threatened Mr. Asbury. In Syllabus Point 1, *State v. Baker*, 177 W.Va. 769, 356 S.E.2d 862 (1987), we said:

---

1. Although Mr. and Mrs. Asbury were divorced, they lived together and planned to remarry.

2. Mr. Asbury maintains that after he told Mr. Miracle to stay away from his family, Mr. Miracle started the fight by shoving him.

3. Mrs. Asbury testified that after she had locked her son in the car, she went around the other side of the apartments where she picked up a board, became frightened and hit someone with the board. Mrs. Asbury said because it was too dark to see, she did not know whom she hit.

The amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return.

*In accord* Syllabus Point 3, *State v. Bongalis,* 180 W.Va. 584, 378 S.E.2d 449 (1989). *See also, State v. Clark,* 175 W.Va. 58, 331 S.E.2d 496 (1985).

■ We also follow the general rule that a person "who is at fault or who is the physical aggressor cannot rely on self-defense." *State v. Smith,* 170 W.Va. 654, 656, 295 S.E.2d 820, 822 (1982).

In the present case, the evidence is uncontroverted that Mr. Asbury got out of his car and approached Mr. Miracle accusing him of sleeping with his wife. The testimony concerning the rest of the incident differs in that Mr. Asbury maintains that Mr. Miracle shoved him to start a fight, which Mr. Miracle lost. Mr. Miracle maintains that he was backing away when Mr. Asbury began hitting him. Mr. Miracle testified that after he fell Mr. Asbury hit him in the eye with something and began kicking him in the face.

On appeal, when this Court views evidence in the light most favorable to the prosecution as required by *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978) [4], the record establishes that Mr. Asbury was the aggressor both at the start of and during the fight. Indeed, the testimony of the two neighbors indicated that Mr. Asbury remained the aggressor. Even after the assault when Mr. Asbury returned to Mr. Miracle's apartment, Mr. Asbury shouted various threats at Mr. Miracle.

However, if we accept Mr. Asbury's version of events, a self-defense instruction is still not required because Mr. Asbury never

believed that he was threatened. According to Mr. Asbury, he walked toward Mr. Miracle with his fists clenched, warning Mr. Miracle to stay away from his family. After Mr. Miracle shoved him, Mr. Asbury "nailed him" knocking Mr. Miracle to the ground. After Mr. Miracle got up he started to run but fell and the fight continued. Mr. Asbury said that he wanted to teach Mr. Miracle to stay away from his family.

We find that under either version of the October 15, 1989 events, Mr. Asbury is not entitled to an instruction on self-defense because either Mr. Asbury was the aggressor or Mr. Asbury never felt threatened. We, therefore, find that the circuit court's refusal to give the self-defense instruction was proper.

## II

■ Mr. Asbury's next assignment of error is that the circuit court erred in allowing presentation of and argument about Mrs. Asbury's grant of immunity. Mrs. Asbury was granted immunity so that she could testify as a material witness for Mr. Asbury. According to Mrs. Asbury's testimony, during the fight she went around the dark side of the apartment building, found a board and when a person appeared in front of her she hit the person with the board. Because Mr. Miracle was hit in the eye with an unidentified object, Mrs. Asbury concluded that she hit Mr. Miracle. On cross-examination, the State questioned Mrs. Asbury's credibility by asking about her grant of immunity.[5] Mr. Asbury did not object.

On appeal Mr. Asbury argues that this question of and the State's argument about Mrs. Asbury's immunity were so misleading that a new trial is required. Mr. Asbury contends that the question and argument mislead the jury because the immuni-

---

**4.** *In accord* Syllabus Point 3, *State v. Drennen,* 185 W.Va. 445, 408 S.E.2d 24 (1991); Syllabus Point 5, *State v. Young,* 185 W.Va. 327, 406 S.E.2d 758 (1991).

**5.** In the cross-examination of Mrs. Asbury, the State asked the following question:

> And now today that nothing is going to happen to you because you have been granted immunity by the Court that you can't be prosecuted for anything that you say here today, you are more than willing to come in here and tell us that you did this and hit somebody with a board, right?

ty did not extend to prosecution for perjury.

First, we note that a witness may be cross-examined about matters affecting credibility and that the trial judge has discretion as to the extent of cross-examination. In Syllabus Point 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), we said:

> Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

*In accord* Syllabus Point 5, *State v. Reedy*, 177 W.Va. 406, 352 S.E.2d 158 (1986).

Second, we note that because no objection was made to the question or to the closing argument, the circuit court judge was not given an opportunity to explain to the jury the limitation of Mrs. Asbury's immunity. Generally the failure to object constitutes a waiver of the right to raise the matter on appeal. In Syllabus Point 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956), we said:

> "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Point 6, syllabus, *Yuncke v. Welker*, 128 W.Va. 299 [36 S.E.2d 410].

*In accord* Syllabus Point 2, *State v. Trogdon*, 168 W.Va. 204, 283 S.E.2d 849 (1981); Syllabus Point 2, *Parsons v. Norfolk and Western Ry. Co.*, 185 W.Va. 718, 408 S.E.2d 668 (1991).

In the present case, we find that the State could properly question Mrs. Asbury's credibility by informing the jury of her grant of immunity. Although the State's question and argument exaggerated the extent of Mrs. Asbury's immunity, the failure of Mr. Asbury to object meant that the circuit court could not properly instruct the jury on the limitation of Mrs. Asbury's grant of immunity. We, therefore, find that Mr. Asbury's failure to object to the question of and argument about Mrs. Asbury's immunity constituted a waiver of the right to raise it on appeal.

### III

In his third assignment of error, Mr. Asbury contends that State's closing argument resulted in manifest injustice and clear prejudice against him. Specifically, Mr. Asbury identifies as objectionable the State's arguments concerning Mrs. Asbury's immunity grant and Mr. Miracle's statements about being hit with something other than fists. (*See supra* Section II for a discussion of Mrs. Asbury's immunity grant.) During the closing argument, Mr. Asbury contends that in discussing Mr. Miracle's statements about being hit, the State vouched for the veracity of the victim.

Recently we restated our general rule that "[i]t is improper for a prosecutor in this State to '[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....'" Syllabus Point 3, *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981). *In accord* Syllabus Point 8, *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990); Syllabus Point 7, *State v. Petrice*, 183 W.Va. 695, 398 S.E.2d 521 (1990). *See also* Syllabus Point 1, *Critzer, supra* (requiring a prosecutor to set a tone of fairness and impartiality); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548, 557 (1988) (prosecutor's status should not be used to bolster a witness' credibility).

In his closing argument, after stating that Mr. Miracle was "certainly drunk," [6]

---

**6.** Mr. Miracle testified that he was not intoxicat-  ed that evening. *See infra* Section IV for a

the prosecutor discussed Mr. Miracle's testimony about being hit with an unidentified object by asking: "Don't you think he would have made something up [to be] hit with?" The prosecutor then retorted: "No, he is here telling you the truth, that he didn't know what he got hit with, but it was something more that fists." In addition, the prosecutor also discussed Mrs. Asbury's testimony that she must have hit the victim with a board and argued, "I submit to you that [her testimony] is a fabrication."[7]

A prosecutor is allowed to argue all reasonable inferences from the facts. In the present case, the prosecution's comments on the witnesses' testimony were based on reasonable inferences from the facts and did not include any interjection of the prosecutor's personal opinion as to the truthfulness of the witnesses. Certainly these two statements do not rise to the level requiring reversal found in *Critzer*.[8] We also note that Mr. Asbury did not object and did not request an instruction to disregard the prosecutor's remarks. We find that these statements by the prosecutor do not require a new trial.

## IV

■ In his last assignment of error, Mr. Asbury maintains that the State improperly elicited testimony known to be false during the redirect examination of Dr. William Gelinas. The victim, Mr. Miracle testified that although he could not remember how many drinks he consumed, he had been drinking since 9:30 p.m. on October 14, 1989. Mr. Miracle also testified that he was not intoxicated on the night of the assault even though he had been informed prior to trial by the prosecutor that his

blood alcohol level was more than twice the legal limit for driving in West Virginia. On cross-examination Dr. Gelinas, who treated Mr. Miracle in the emergency room, testified that Mr. Miracle had a .206 blood alcohol level. However when asked if that meant Mr. Miracle was intoxicated, Dr. Gelinas replied, "I can't answer that one.... I don't know the exact level...." Dr. Gelinas also said that he could not recall if Mr. Miracle appeared intoxicated. On redirect, when the prosecution asked if the hospital records for Mr. Miracle delineated any symptoms of intoxication, Dr. Gelinas answered that none was listed. Although Mr. Asbury objected, the trial court allowed the questions.

■ In Syllabus Point 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971), we said:

An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.

*In accord* Syllabus Point 9, *State v. Hanson*, 181 W.Va. 353, 382 S.E.2d 547 (1989); Syllabus Point 2, *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254 (1982); Syllabus Point 1, *State v. McCormick*, 168 W.Va. 445, 290 S.E.2d 894 (1981); Syllabus Point 1, *State v. Compton*, 167 W.Va. 16, 277 S.E.2d 724 (1981).

In the present case, Mr. Asbury elicited testimony from Dr. Gelinas concerning Mr. Miracle's intoxication. The redirect testimony from Dr. Gelinas was directed to the lack of notation in hospital records of Mr. Miracle's intoxication symptoms. Mr. Asbury's argument that the State's redirect questioning was designed to elicit false testimony, is without merit. Dr. Gelinas testi-

---

discussion of the testimony about Mr. Miracle's intoxication.

7. The prosecutor ended his discussion of Mrs. Asbury's testimony by saying to the jury, "You have to consider the reliability of the witnesses. Which ones are more credible, which ones are telling the truth."

8. In *Critzer*, after the prosecutor interjected his opinion of the defendant's guilt, and the truthfulness of both his and the defendant's witness-

es (*Critzer, id.* 167 W.Va. at 660–61, 280 S.E.2d at 292), he "compared the defendant to a vulture" coming into this State "to victimize dumb hillbillies." *Critzer, id.* 167 W.Va. at 661, 280 S.E.2d at 292. *See also State v. Moore*, 186 W.Va. 23, 409 S.E.2d 490 (1990) (cumulative effect of prosecutor's comments constituted plain error); *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988) (prosecutor's remarks during closing argument were so egregious that they constitute plain error).

fied to Mr. Miracle's blood alcohol level and the redirect examination was based on Dr. Gelinas' statements in cross-examination. We also note that in the closing argument, the prosecutor maintained that Mr. Miracle was drunk.

Finally we noted that " '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, [171 W.Va. 639, 643], 301 S.E.2d 596, 599 (1983)." Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983). *In accord* Syllabus Point 4, *State v. Farmer*, 185 W.Va. 232, 406 S.E.2d 458 (1991). Because of Dr. Gelinas's testimony on cross-examination, we find that the circuit court did not abuse its discretion in allowing the State, on redirect, to request information about the hospital's notation of intoxication symptoms.

For the above stated reasons, the judgment of the Circuit Court of Ohio County is affirmed.

Affirmed.