# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **A.M.**

**No. 16-1201** (Wood County 15-JA-28)

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother D.M., by counsel Debra L. Steed, appeals the Circuit Court of Wood County's September 16, 2016, order terminating her parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in accepting her stipulation at adjudication without complying with Rule 26(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings. Petitioner further argues that the circuit court erred in terminating her parental rights (1) without requiring the DHHR to provide an adequate assessment of her ability to parent the child with long-term services; (2) when she was largely compliant with the terms and conditions of her improvement period; and (3) when the DHHR failed to address the allegations of abuse and neglect contained in petitioner's stipulation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

In February of 2015, the DHHR filed an abuse and neglect petition that alleged that petitioner was of limited intellectual capacity and was unable to provide safe, proper care for the child. The petition further alleged that petitioner and her live-in boyfriend exposed the child to domestic violence.[3] In March of 2015, the circuit court held a preliminary hearing.[4]

In April of 2015, petitioner submitted a written stipulation during the adjudicatory hearing. Specifically, petitioner admitted to failure to follow through with proposed parenting direction and exposure of the child to domestic violence. Petitioner's appointed counsel, John Oshoway, was not present during the hearing. However, a different attorney represented petitioner in counsel's absence, and Mr. Oshoway signed the written stipulation that petitioner submitted to the circuit court.[5] The circuit court additionally granted petitioner a post-adjudicatory improvement period.

During a review hearing in November of 2015, the DHHR reported that petitioner failed to make significant progress in her improvement period, despite her compliance with the terms thereof. In fact, providers raised concerns that petitioner was not able to process and implement the skills necessary to parent the child, regardless of the services offered. Despite these concerns, the circuit court granted petitioner an extension to her improvement period. The circuit court also appointed a guardian ad litem to represent petitioner. During a hearing in February of 2016, the DHHR again reported that petitioner failed to make significant progress, despite her compliance with services. The circuit court granted petitioner's request for additional visits with the child but further set the matter for disposition.

The circuit court continued the dispositional hearing scheduled for April of 2016 on petitioner's motion so that she could complete a parental fitness evaluation. Also in April of 2016, the child's guardian filed a report that noted petitioner's minimal participation in her improvement period. The same month, the DHHR filed a report that noted petitioner ceased regular attendance at services during February of 2016 and that she lacked progress in meeting the goals of her improvement period.

In June of 2016, the circuit court held a dispositional hearing. By this point, the results of petitioner's parental fitness evaluation revealed that petitioner was unable to appropriately care for the child. Specifically, the evaluator indicated that petitioner was volatile and argumentative during the evaluation and refused to answer many questions. Petitioner also expressed that she had "no idea" why her child was removed from her care. Ultimately, the evaluator indicated a

---

[3]The initial petition did not contain any allegations against A.M.'s father, R.T. The DHHR filed an amended petition to include allegations against him in October of 2015.

[4]At the preliminary hearing, the circuit court was informed that petitioner's mother, P.C., was petitioner's legal guardian. Accordingly, the circuit court added P.C. as a party to the case and appointed her an attorney.

[5]Petitioner's current counsel was not appointed to represent her until August of 2015.

2

"very poor" prognosis for petitioner's parenting skills to improve, based on her lack of insight into her situation and failure to take responsibility for the child's removal from her home.

Moreover, a DHHR employee testified that she provided parenting and adult life skills education to petitioner for approximately eight months. According to this provider, petitioner's attendance became sporadic beginning in February of 2016, and she made little progress as a result. This provider also testified that petitioner did not complete the programs and continued to struggle with inappropriate relationships. According to her visitation supervisor, petitioners' attendance became inconsistent beginning in January of 2016. The visitation supervisor further testified that she was not comfortable leaving petitioner alone with the child. Another DHHR caseworker testified to petitioner's difficulties with stability, including the fact that she lived in five different residences and had relationships with five different men during the course of the abuse and neglect proceedings. The caseworker further testified to petitioner's continued issues with basic parenting and life skills, which were exacerbated by her inconsistent attendance.

The circuit court then continued the dispositional hearing to September of 2016. During the continued hearing, petitioner admitted that she continued to miss visits and that her most-recent boyfriend went to jail on unrelated criminal charges. Ultimately, by order entered on November 3, 2016, the circuit court terminated petitioner's parental rights to the child. According to the order, petitioner made little progress during her improvement period and was simply unable to properly parent the child.[6] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

_____

[6]The parental rights of both parents were terminated below. According to the DHHR, A.M. is currently placed in a foster home with a permanency plan of adoption therein.

3

First, petitioner argues that the circuit court erred in accepting her stipulation because it failed to properly question her as to the content and consequences of the stipulation. According to petitioner, the circuit court failed to (1) engage her in further questioning regarding the content of the stipulation; (2) to inform her that she was entitled to a hearing and did not have to admit to the allegations against her; and (3) to ensure that she understood the consequences of the stipulation. The Court, however, finds no error in regard to the circuit court's acceptance of petitioner's stipulated adjudication because the requirements of Rule 26 of the Rules of Procedure for Child Abuse and Neglect Proceedings were satisfied.

According to Rule 26(b),

> [b]efore accepting a stipulated or uncontested adjudication, the court shall determine that the parties understand the content and consequences of the admission or stipulation, the parties voluntarily consent, and that the stipulation or uncontested adjudication meets the purposes of these rules and controlling statute and is in the best interests of the child.

In questioning petitioner as to the voluntariness of her stipulation, the circuit court specifically inquired as to whether petitioner "enter[ed] into this voluntarily of your own free will[,]" to which petitioner responded affirmatively. Petitioner also indicated that she was not forced, coerced, threatened, or otherwise induced into entering the stipulation. On the contrary, petitioner confirmed that she met with her attorney on the morning of the adjudicatory hearing to review and discuss the stipulation. Ultimately, petitioner indicated that she had no questions concerning the stipulation.

Further, the stipulation itself contained a detailed recitation of the conditions of abuse and/or neglect to which petitioner was admitting and, therefore, required no more additional discussion on the record. Moreover, the consequences of petitioner's stipulation are addressed in the stipulation itself, which petitioner's counsel explained to petitioner. That stipulation clearly states that, as a result of the conduct to which petitioner admitted, "the child is an abused and neglected child within the meaning of the West Virginia Code [§] 49-6-1 et al." Based on the inclusion of this language, counsel's discussions with petitioner concerning the stipulation itself, and the execution of the stipulation by both counsel and petitioner, the circuit court determined that petitioner understood that, as a consequence of her stipulation, the child would be found to be an abused and neglected child. For these reasons, we find no error in the circuit court's acceptance of petitioner's stipulation at adjudication.[7]

---

[7]In support of this assignment of error, petitioner also argues that it was error for the circuit court to accept her stipulation in the absence of her appointed attorney. The record shows, however, that petitioner's appointed attorney met with her on the morning of the adjudicatory hearing to review and discuss the stipulation, and petitioner acknowledges that her attorney obtained substitute counsel to represent her at the adjudicatory hearing. According to petitioner, the attorney who represented her in her appointed counsel's absence "may have" had a "potential conflict of interest" in representing both petitioner and petitioner's mother, as petitioner's legal

(continued . . . )

4

Next, petitioner argues that the circuit court erred in terminating her parental rights without first requiring the DHHR to provide an adequate assessment of her parental abilities or provide additional long-term services. In support of this assignment of error, petitioner cites to our prior holdings regarding allegations predicated on intellectual incapacity, including our following direction:

> "Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). We find no merit to petitioner's arguments in this regard. First, the record is clear that the DHHR provided petitioner with both a psychological evaluation and a parental fitness evaluation to determine her capacity for properly parenting the child. Second, although petitioner complains of the kind of services offered below, she does not dispute that the DHHR provided extensive services throughout the duration of these proceedings. Petitioner further cites to no portion of the record on appeal wherein she requested services different from those offered below. Moreover, we note that it was petitioner's failure to comply with services and her inability to apply what she learned therein,

---

guardian. However, petitioner points to no explicit conflict of interest or otherwise explains how this representation impacted the circuit court's acceptance of her stipulation. In short, the Court declines to grant petitioner relief in this regard, as the same constitutes invited error on petitioner's part. We have held that "'[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.' Syllabus Point 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W.Va. 213, 719 S.E.2d 381 (2011). Further,

> "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

*Id.* at 215, 719 S.E.2d at 383, Syl. Pt. 3. Although petitioner has new counsel on appeal, the record is clear that it was petitioner's counsel at the time who arranged for different counsel to represent her at the adjudicatory hearing. Accordingly, petitioner is foreclosed from asserting any error with regard to her representation at adjudication on appeal.

not the nature of the services offered, that led to the circuit court's termination of her parental rights.

Specifically, petitioner's parental fitness evaluation, conducted in May of 2016, revealed that she lacked insight into the conditions of abuse and neglect in the home and took no responsibility for the child's removal. In fact, the evaluator indicated that petitioner said she had "no idea" why the child was removed from the home. Importantly, the evaluator found that petitioner's prognosis for improved parenting was "very poor" given her inability to provide proper care. This evaluation was conducted approximately one year after petitioner's improvement period commenced, thereby evidencing her failure to improve her parenting through services. Further, petitioner's failure to improve was based, in large part, upon her failure to fully participate in those services. As of the dispositional hearings, multiple providers testified that petitioner had yet to complete specific services. One provider specifically testified that petitioner's many absences from scheduled instruction was the cause of petitioner's inability to implement those services. According to petitioner's parenting and adult life skills provider, of the twenty-three scheduled meetings between January of 2016 and April of 2016, petitioner attended only eight sessions. This led the provider to testify that petitioner could not obtain much from services because of "all the time she missed" and the fact that the provider did not "see her on a weekly basis" as required. Similarly, petitioner's visitation supervisor testified that petitioner attended only eight of the twenty-two scheduled visitation beginning in January of 2016.

Accordingly, we find that the DHHR made a thorough effort to determine whether petitioner would be able to care for the child with intensive long-term services, both through its multiple evaluations of petitioner and the services offered below. Simply put, it is clear that petitioner's unwillingness to comply with the services offered illustrated her inability to comply with more extensive services. As such, we find no error in the circuit court proceeding to termination of petitioner's parental rights without requiring the DHHR to provide additional services.[8]

Finally, petitioner argues that it was error to terminate her parental rights when she was largely compliant with the terms and conditions of her improvement period. In support of this argument, petitioner cites to testimony from multiple providers who stated that petitioner was

---

[8]Petitioner also argues that it was improper for the circuit court to proceed to termination without requiring the DHHR to offer services designed to remedy the conditions of abuse and neglect in the home. Specifically, petitioner argues that she stipulated to domestic violence in the home, yet the DHHR never offered services specifically designed to address this issue. The record, however, contradicts petitioner's argument, as the case plan specifically indicates that issues of domestic violence were covered in petitioner's adult life skills services. Moreover, petitioner approved this case plan. Accordingly, we find that petitioner waived her right to assert error on appeal in regard to the services offered below, as she not only failed to object to the case plan at issue, but actively approved the same. *See State v. Asbury*, 187 W.Va. 87, 91, 415 S.E.2d 891, 895 (1992) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

compliant with services below. However, we note that petitioner's reliance on this testimony is misplaced. Although the providers testified that petitioner was compliant with some services at some points in the proceedings, the overwhelming evidence indicated that she failed to benefit from the services and, in fact, stopped complying with many services in approximately January of 2016. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). While it is true that petitioner did comply with services, the circuit court was presented with ample evidence that she was unable to benefit from those services and, additionally, stopped complying with important services toward the end of the proceedings. The circuit court specifically found that petitioner was "inconsistent in her participation in therapy and counseling services provided to her from the end of January 2016" and further that "she made little progress in developing parenting skills . . . ." As such, it is clear that the child's best interests in this matter necessitated termination of petitioner's parental rights.

This is further supported by the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Based on petitioner's failure to fully comply with services below, we find no error in the circuit court's finding in this regard. Moreover, the circuit court also found that the child's welfare necessitated termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: June 9, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7