# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NICOLLE W.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-5**  (Fam. Ct. Mason Cnty. Case No. FC-26-2023-D-54)

**JARLANDO W.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Nicolle W.[1] ("Mother") appeals the Family Court of Mason County's December 5, 2023, Final Order of Divorce that deviated from the presumption of equal (50-50) custodial allocation by designating Respondent Jarlando W. ("Father") as the child's primary custodial parent, awarded her parenting time every other weekend, and ordered her to pay child support based on her attributed income.[2] Father filed a response in support of the family court's decision. Mother filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in November 2009 and separated in November 2017. They had one child during the marriage, who was born in September 2013. Prior to separating, the parties were living in San Diego, California, where Father was stationed as active military in the United States Marine Corps. Around November 2017, Mother was granted a 90-day military protection order against Father that ordered him to have no contact with her or the child. Mother subsequently left California with the child and moved into the home of the child's maternal great-grandparents in Ohio.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Nicolle W. is represented by William B. Summers, Esq. Jarlando W. is self-represented.

1

After moving to Ohio, Mother became mentally unstable and left the child in the care of the maternal great-grandparents while she obtained medical care for her mental health. Between late 2018 and early 2019, upon learning that Mother was no longer residing with the child, Father retrieved the child and returned with him to live in California. The child continued to reside with Father in California until the COVID pandemic spread in 2020 and school was cancelled. Because Father was active military and had no childcare provider, he permitted the child to live temporarily with the child's maternal great-grandparents, who had relocated to Alabama.

In January 2021, as Father was processing out of the military, he and the child moved to Alabama where they resided with the maternal great-grandparents. In November 2021, he and the child relocated from Alabama to West Virginia. After their relocation to West Virginia, Mother began to exercise some parenting time and limited communication to the extent the parties were able to agree.

In April 2023, Mother, without counsel, filed for divorce in the Family Court of Mason County, West Virginia.[3] In her petition, she alleged that Father prevented her from contacting the child until he moved to West Virginia.[4] Even then, she alleged that he limited her contact with the child. Mother also addressed concerns with Father's excessive drinking, his inappropriate and vulgar public posts on social media, and his inability to encourage a positive relationship between her and the child. Mother requested the family court to award her primary or equal custody of the child.

Mother also moved for temporary relief when she filed for divorce, requesting that the family court determine custodial responsibility and time to be spent with the child. She further requested that Father furnish his military records, which she alleged would show a history of alcohol abuse and domestic violence. She also requested his fiancée's custodial records since his fiancée did not have custody of her own children but was a stay-at-home parent for the parties' child.

On June 12, 2023, the family court held a temporary hearing on the divorce petition and entered a temporary order on June 16, 2023. In its order, the family court found that neither party presented evidence of a limiting factor that would warrant a limitation on

---

[3] The record indicates she was living in Boone County, Kentucky, and Father was living in Mason County, West Virginia, throughout the proceedings.

[4] Mother alleged that Father denied her all contact with the child in 2019 and refused to provide his mailing address so that she could send the child gifts. Mother alleged that the military also denied her any assistance and that in order to locate Father and her son, she called one of the two Domino's Pizzas located on base and pretended to order a pizza and asked that they confirm her address. Only then was she able to mail her child gifts.

2

either parent's parenting time. The court also found that the presumption of equal (50-50) custody was rebutted because Mother was not significantly involved in the child's life prior to the filing of her petition, and it was impractical since the parties lived two and a half hours apart. The court awarded primary custody to Father with Mother receiving parenting time every other weekend. The court set the final hearing for August 23, 2023.

On July 25, 2023, Mother, by recently retained counsel, filed a motion to convert the final hearing into a pretrial hearing and to make the rules of discovery applicable. The family court granted this motion and ordered that each party was to respond within twenty days after a written discovery request was made.

On August 17, 2023, Mother filed a motion for the family court to interview the child. The court subsequently took in-camera testimony of the child where the child testified that he desired to spend more time with Mother on the weekends and in the summer. At the conclusion, when asked if there was anything else he would like to tell the court, the child stated that he would like to live with Mother because he had been bullied at school during the previous school year.

On September 18, 2023, Father was served with Petitioner's First Set of Interrogatories and Requests for Production of Documents Directed at the Respondent. This was hand delivered to him at the time of the child's in-camera testimony. On October 6, 2023, Father hand delivered his responses. However, Mother asserted that his responses were incomplete or deficient and sent him a letter requesting supplementation before the close of business on October 23, 2023. On November 6, 2023, two days before the final hearing, Mother filed a Motion for Sanctions requesting that the family court exclude any evidence related to the interrogatories and request for productions that Father did not respond to.

At the beginning of the final hearing on November 8, 2023, the family court denied Mother's Motion for Sanctions, based upon its timeliness. The court entered an order on December 5, 2023, divorcing the parties and entering a parenting plan on behalf of the minor child. In its order, the family court found that neither party had proven the other to be an unfit parent but found that the presumption of equal (50-50) custodial allocation had been rebutted under West Virginia Code § 48-9-203(f) (2022), finding that:

A. Mother had not been significantly involved in the child's life for several years prior to the filing of her Petition, and the lack of her involvement was not the result of Father's actions. Mother admits that she was not mentally stable during the first couple of years and that she subsequently sought proper medical diagnosis and treatment in order to become stable.

B. Father is a fit parent and has been the primary caretaker for the minor child for the past two years.

3

C. Mother resides an approximate 2.5[-]hour drive from Father's residence. A 50-50 parenting arrangement is impractical due to the distance between the parties' homes.

The family court found that it was in the child's best interest to enter a parenting plan that awarded Father primary custody of the child. The plan granted Mother parenting time during the school year every weekend except on the first weekend of every month. During summer break, the court ordered the parties to alternate parenting time on a weekly basis, exchanging the child every Sunday at 6:00 p.m.

Additionally, the family court ordered Mother to pay child support in the amount of $821.75 per month, effective December 1, 2023. The court found that Mother worked for thirty-four hours per week at $12.00 per hour at Castle Jewelry, for a monthly average gross income of $1,768.00. The court further found that at the time of the temporary divorce hearing in June 2023, Mother was employed as an admissions advisor with the Arizona College of Nursing where she earned $31.25 per hour at 40 hours per week, or $5,416.67 gross per month and that she resigned from this job because her employer would not give her the day off to celebrate her son's birthday. The court attributed Mother her previous income of $5,416.67 gross per month since she was not attending school full-time, not providing care for a preschool aged minor child, not pursuing a plan of economic self-improvement, and did not have a disability that prevents her from working. It is from this final order that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

This Court has previously stated that:

> "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt., *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). The appellate court may reverse for

4

abuse of discretion if "a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the [lower court] makes a serious mistake in weighing them." *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995).

*Jonathon F. v. Rebekah L.*, 247 W. Va. 562, 564, 883 S.E.2d 290, 292 (Ct. App. 2023). Keeping these standards in mind, we consider Mother's issues raised on appeal.

On appeal, Mother asserts six assignments of error that we will address in turn. First, she argues that the family court erroneously denied her Motion for Sanctions, which asked the court to exclude any evidence relating to the interrogatories and requests for production that Father did not respond to, for being untimely. She contends that she followed the family court's discovery order, which had a short time frame, and attempted to resolve the issue prior to the final hearing. She suggests that the court's decision to not sanction Father for disregarding numerous discovery requests deprived her of essential evidence necessary for a fair trial regarding equal (50-50) custody of the child. We are unpersuaded by her argument.

The Supreme Court of Appeals has long held that "rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Although Mother notified Father that he had until October 23, 2023, to supplement discovery, she did not file her Motion for Sanctions until November 6, 2023. The family court, in denying Mother's motion for being untimely, reasoned that she had waited two weeks after the October 23 deadline to file her motion, and it was filed less than forty-eight hours before the final hearing was set to begin. Additionally, after a review of the final hearing, Mother made no objection or argument regarding the family court's denial of her motion. "Generally, the failure to object constitutes a waiver of the right to raise the matter on appeal." *State v. Asbury*, 187 W. Va. 87, 91, 415 S.E.2d 891, 895 (1992). Thus, we conclude that the family court did not err in denying Mother's Motion for Sanctions.

Mother next assigns error to the family court's finding that Father was a fit parent. She argues that the family court did not consider her testimony that highlighted Father's alcohol consumption, legal issues, and parenting practices. She further asserts that the court did not adequately consider the numerous items of physical evidence presented, that consisted of video material depicting Father's inability to appropriately care for the child, which would have rebutted the (50-50) presumption of custody. We disagree.

This Court has previously held that:

5

This Court cannot set aside a family court's factual findings "unless they are clearly erroneous." A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous standard, an appellate court does not reweigh the evidence and cannot reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Further, a family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility. *See Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision).

*James W. v. Ciara R.*, Nos. 23-ICA-237, -238, and -239, 2024 WL 1740353, at *6 (W. Va. Ct. App., Apr. 22, 2024) (memorandum decision). Based on the record before us, the family court did consider Mother's testimony and physical evidence but found that Mother failed to prove Father was an unfit parent. In particular, the court found that the videos and testimony were insufficient to prove that Father was intoxicated when the child was present. Therefore, we conclude that Mother is simply asking that we reweigh the evidence and rule in her favor, which we decline to do.

For Mother's third assignment of error, she argues that the family court erred by disregarding the child's preference to live with her. She contends that the court failed to make any findings pursuant to West Virginia Code § 48-9-209(f)(5)(E) (2022) that the child was not sufficiently matured to justify its decision in awarding Father primary custody, which was not the child's wish. We do not find merit in this argument.

In determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including . . . [w]hether an equal (50-50) physical allocation is . . . [c]ontrary to the firm and reasonable preferences of a child who is 14 years of age or older; and to accommodate if the court determines it is in the best interests of the child, the firm and reasonable preferences of a child under 14 years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent.

W. Va. Code § 48-9-209(f)(5)(E).

The record reveals that the child was ten years of age at the time of the final hearing. Pursuant to West Virginia Code § 48-9-209(f)(5)(E), the family court was not required to make any specific findings that the child was mature or could intelligently express a voluntary preference for one parent because the court did not determine that the child's preference was in his best interest; the court is not required to adopt the preference of a

child who is under fourteen years of age. Stated another way, the family court is only required to make such findings when it determines that the preference of a child who is under fourteen years age is in the child's best interest, thus rebutting the presumption. Regardless, the order indicates that the court considered the child's preference but did not ultimately find it to be in the child's best interest. Therefore, we conclude that the family court did not abuse its discretion by not adopting the child's custodial preference.

Next, Mother assigns error to the family court for rejecting an equal (50-50) parenting plan. She argues that the family court erroneously based its decision on the child residing primarily with Father for the last two years and Mother residing two and a half hours from them. In support of her argument, she asserts that the court did not consider the grandparents' significant participation in the child's life and how Father abruptly removed the child from their care, only assuming sole responsibility in the last two years. We are unpersuaded by this argument.

This Court has previously stated that,

West Virginia Code § 48-9-206(a) presumes equal (50-50) custodial allocation of parenting time unless otherwise resolved by agreement of the parties. However, the family court may deviate from equal custodial time if the court expressly finds that the arrangement would be harmful to the child or that a provision of West Virginia Code § 48-9-209(f) necessitates another arrangement.

*Jonathan F. v. Rebekah L.*, 247 W. Va. 562, 564, 883 S.E.2d 290, 292 (Ct. App. 2023).

In the matter before us, the family court's order acknowledged the grandparents' significant involvement in the child's life, the timeline of Father assuming primary custodial responsibility, and Mother's absence in the child's life. The court found that Father had indeed rebutted the presumption of equal (50-50) custody by proving that Mother had not been significantly involved in the child's life prior to the filing of her petition, through no fault of Father, and that she lived two and a half hours away from Father and the child.[5] The court further found that the parenting plan was not harmful to

---

[5] In determining whether a party has rebutted the presumption of equal (50-50) custody, West Virginia Code § 48-9-209(f)(3)(D) requires courts to consider all relevant factors, including whether a parent:

Has . . . not been significantly involved in the child's life prior to the hearing, except when the lack of involvement is the result of actions on the part of the other parent which were, without good cause, designed to deprive the parent

the child and was in the child's best interest. Therefore, we conclude that the family court justified its decision to deviate from equal (50-50) custodial allocation, by analyzing and considering certain provisions of West Virginia Code § 48-9-209(f) and thus, did not abuse its discretion.

For her fifth assignment of error, Mother accuses the family court of exhibiting inappropriate deferential treatment to Father because he was unrepresented. Mother asserts that because she was represented by counsel, Father received an unfair advantage from the court that resulted in procedural discrepancies disadvantaging her throughout the proceedings. However, Mother cites to no specific location in the record on appeal. According to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, a petitioner's "argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." That rule further provides that this Court "may disregard errors that are not adequately supported by specific references to the record on appeal." *Id*. Because Mother neither included a citation to the record indicating where the family court was biased towards Father due to his status as an unrepresented party nor where she voiced any argument or related objection to the family court regarding her allegation, we decline to address this argument on appeal.

For her sixth and final assignment of error, Mother argues that the family court abused its discretion by attributing income to her for the purpose of calculating child support when she had no ability to pay the same. She contends that the court failed to consider her lack of assets, her loss of employment, her cohabitation with a roommate so she could afford rent, her educational attainment, her mental health issues, her criminal record, and her other employment barriers pursuant to West Virginia Code § 48-1-205(a) (2023).[6] However, Mother disregards the remaining language in subsection (b) and (c) of that code, and as explained in detail below, we disagree with her argument.

---

of contact and involvement with his or her child or children without good cause[.]

Courts are also required to consider whether equal (50-50) custody is "[i]mpractical because of the physical distance between the parties' residences." W. Va. Code § 48-9-209(f)(5)(A).

[6] West Virginia Code §48-1-205(a) provides that "attributed income" is:

[I]ncome not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, or is working below full earning capacity, or has nonperforming or underperforming assets. Income may be attributed to a parent if the court evaluates the specific circumstances of the parent to the extent known,

8

Subsection (b) of West Virginia Code § 48-1-205 states, in relevant part:

> (b) If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed, or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court to determine gross income is to attribute to the person an earning capacity based on his or her previous income.

In *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997), the Supreme Court of Appeals recognized that a family court must consider the three-part test, set out in subsection (b) of West Virginia Code § 48-1-205 above, when determining whether to attribute income.

In the instant case, the family court's conclusions of law indicate that the court correctly applied the facts of this case to the three-part test articulated in West Virginia Code § 48-1-205(b) and recognized in *Porter*. First, the court found that Mother voluntarily left her employment where she was working forty hours per week and earning $31.25 per hour for a job where she works approximately thirty-four hours per week at $12.00 per hour. Second, the court implied that Mother was available to work full-time by finding that she was not attending school full-time, was not providing care for a preschool aged child, was not pursuing a plan of economic self-improvement, and did not have a disability that prevented her from working. Third, the court found that attributing Mother's former income to her was appropriate because her voluntary income reduction was not reasonable under the circumstances, explaining that Mother resigned from her former employment simply because her employer would not allow her to take paid time off for the child's birthday. The family court additionally found that the statutory exceptions to attribution of income pursuant to West Virginia Code §48-1-205(c)[7] were not present. Therefore, we

---

including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, physical and mental health, criminal record, and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case. Income may also be attributed to a parent if the court finds that the obligor has nonperforming or underperforming assets.

[7] Income shall not be attributed to an obligor who is unemployed, underemployed, or is otherwise working below full earning capacity if any one of four conditions exist. W. Va. Code § 48-1-205(c). Those four conditions are as follows:

conclude that since the evidence supported the family court's findings and decision, the court did not abuse its discretion by attributing Mother's former income to her for purposes of calculating child support.

Accordingly, based on the foregoing, we affirm the Family Court of Mason County's December 5, 2023, Final Order of Divorce.

Affirmed.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

(1) The parent is providing care required by the children to whom both of the parties owe a legal responsibility for support and the children are of preschool age, or are handicapped, or otherwise in a situation requiring particular care by the parent;

(2) The parent is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children to whom the support obligation is owed, including, but not limited to, self-employment or education: *Provided*, That if the parent is involved in an educational program, the court shall ascertain that the person is making substantial progress toward completion of the program;

(3) The parent is, for valid medical reasons, earning an income in an amount less than previously earned; or

(4) The court makes a written finding that other circumstances exist which would make the attribution of income inequitable: *Provided*, That in the case the court may decrease the amount of attributed income to an extent required to remove inequity.

W. Va. Code § 48-1-205(c).